HAVENS *against* HUNTINGTON.

ASSUMPSIT, to recover the amount of two promissory notes hereinafter recited. The declaration contained two counts upon the notes themselves, that is to say : one count upon each of the notes against the defendant, as maker, in favour of the plaintiff, as endorsee of *Jenkins & Havens*, the payees, in the usual form. It also contained the common money counts, and a count upon an *insimul computassent.* The defendant pleaded the general issue, with notice of set off. An order for a bill of particulars having been obtained, the plaintiff, in pursuance thereof, stated the particulars of his demand, arising under the third and fourth counts of his declaration, viz. the money counts, and count upon the *insimul computassent*, in the words following : " The particulars of the plaintiff's demand, contained in the third and fourth counts of his declaration in this cause, are the several sums of money specified in the two several promissory notes, mentioned and described in the two first counts of the said declaration. And the plaintiff reserves to himself the right, if necessary, of offering the two promissory notes aforesaid, or either of them, in evidence, on the trial of this cause, or otherwise, in support of his demand, contained in the third and fourth counts of his declaration, aforesaid, and each of them."

*Where J. & H. endorsed a promissory note for the defendant's accommodation, and on its being dishonoured, paid and took it up, and J. & H. then delivered the note to H. alone, with the original endorsment thereon, held, that H. might maintain an action in his own name, alone, as endorsee.*

*The negotiable quality of a note is not destroyed by advancing the money and taking it up : Unless this be done, animo solvendi.*

*Yet whe e, in such a case, its negotiation may work a wrong to any one of the* previous parties, such a payment will be holden to extinguish the note, and prevent its negotiability, and this for the purposes of justice :

As if a subsequent endorsee may thereby be rendered liable.

And so of the like cases.

It is no objection to an action, by the endorsee against the maker, that the note thus taken up was originally given to the payee, and endorsed by him for the accommodation of the maker ;

For, by paying it as endorser, he becomes possessed of the note, as a purchaser ; is capable of suing upon the note itself; is not confined to an action for money paid ; and might make himself liable, as endorser, upon it.

And the defendant may avail himself of any defence which he might have had against the payee, had the action been in his own name.

A note, though over-due, and dishonoured, may still be negotiated, subject to all the equities between the original parties.

UTICA,         The cause was tried before his honour, the late Mr. Jus-
August, 1823.  tice YATES, at the *New-York* sittings, on the 27*th November*,
HAVENS         1821.    On the trial, the two notes declared on were proved
v.             and read in evidence to the jury, the first being as follows :
HUNTINGTON.

" Ds. 2000.    Sixty  days after date, I promise to pay
" Messrs. *Jenkins & Havens*, or order, two thousand dollars,
" value rec'd.    *New-York, July* 1*st*, 1814.
                    (Signed)            " *Ben Huntington.*"
        (Endorsed)    " *Jenkins & Havens.*"
The second note was as follows :
                    " *New-York*, 29*th July*,  1814.
" Sixty days after date, I promise to pay  Messrs. *Jenkins*
" *& Havens*, or order, two thousand dollars, value rec'd.
" Ds. 2000."            (Signed)        " *Ben Huntington.*"
        (Endorsed)    " *Jenkins & Havens.*"

*William Whitlock*, the witness, who proved the notes, be-
ing cross-examined, testified that, at the time the notes were
given, he was a clerk of the firm of *Jenkins & Havens*,
which consisted of the plaintiff and *Frederick Jenkins :* that
the endorsement of the notes is in the hand writing of the
plaintiff : that the notes were endorsed by *Jenkins & Havens*,
for the accommodation of the defendant, *Huntington*, the
maker, who got them discounted at the bank, for his own
use ; and that *Jenkins & Havens* afterwards, (when the notes
had fallen due, and were dishonoured by the maker) as en-
dorsers, paid the amount of the notes to the bank, and took
them up.

Upon this evidence, the defendant's counsel moved for a
non-suit, upon the ground that *Jenkins & Havens*, the endor-
sers, by paying the amount of the notes to the bank, and ta-
king them up, acquired such title to the notes, as only ena-
bled them to bring an action in their joint names ; and that
they could not, by a subsequent transfer, or delivery of the
notes to the plaintiff, enable him to bring the action in his
individual name, nor give them in evidence in this action ;
and that no action could be sustained in the name of the
plaintiff, solely, the notes, in consequence of the payment,
having ceased to be negotiable.    The plaintiff's counsel, on
the contrary, insisted, that the notes, being endorsed in

blank, and paid, and taken up by the endorsers, they might, by delivery or transfer of the notes to the plaintiff, enable him to bring an action thereon, as against the maker, in his own name ; and that an action upon a note, endorsed in blank, may be maintained in the name of any person, subject to any equities existing between the original parties ; and that the evidence, *prima facie,* was sufficient to support the action, either on the special counts, or the money counts. His honour the Judge, however, ruled that, although *Jenkins & Havens,* the endorsers, by paying and taking up the notes, might have brought an action in their joint names, yet that they could not, by a subsequent transfer or delivery of the notes to the plaintiff, enable him to bring an action in his individual name : that the action could only be brought in the joint names of *Jenkins & Havens ;* and that the evidence was not competent to sustain this action : that he would direct the plaintiff to be nonsuited, with leave to move the Court to set the nonsuit aside.    The plaintiff's counsel then offered to prove further, that the partnership of *Jenkins & Havens* had been since dissolved, and that this firm was indebted to the plaintiff, as one of the partners, to an amount equal to the amount of the notes, so that he was entitled to the whole benefit thereof ; but his honour thought the testimony immaterial, and therefore rejected it, and the plaintiff was, thereupon, by his honour's direction, nonsuited, with leave to move the Court to set aside the nonsuit.    A motion to set aside the nonsuit, and for a new trial, was now made accordingly.

*W. Slosson,* for the plaintiff, insisted,

1. That *Jenkins & Havens,* the indorsers, by taking up the notes, which they were legally liable to do, acquired a clear right of action, *upon the notes,* as payees ; the payment of a note, by an indorser, being a legal purchase of the security, and not an extinguishment of the note.

2. That the notes, being available in their hands, and being indorsed by them in blank, they could, by transfer or delivery, enable the plaintiff to maintain an action, subject to the equities existing at the time of the transfer.(a)

(a) *Callow* v. *Lawrence,* 3 M. & S. 95. *Ch. on Bills, Phil. ed.* 440.

HAVENS
v.
HUNTINGTON.

(b) Cooper v.
Kerr, 3 John.
Cas. 264.

(c) 3 Mass.
Rep. 556.
(d) 8 id. 465.

(e) Brown v.
Davies, 3 T.
R. 80. Taylor
v. Mather, id.
83, in note.
Johnson v.
Bloodgood, 1
John. Cas. 51,
S. C. 2 Caines'
Cas. Err. 303.
Sebring et al.
v. Rathbun, 1
John. Cas.
331. Lansing
v. Gaine &
Ten Eyck, 2
John. Rep.
306. O'Calla-
ghan v. Saw-
yer, 5 id. 118.
Lansing v.
Lansing, 8 id.
454. Ch. on
Bills, Phil. ed.
168. Id. Sto-
ry's ed. 105 to
106.
(f) 3 John.
Cas. 259, 263,
264.
(g) 1 H. Bl.
89, in note.

3. That an action may be maintained, on a note trans-ferrable, by delivery, in the name of any person.(b)

4. That the evidence was also competent, under the money counts.

5. That his honour, the Judge, was mistaken in the law, as ruled by him ; and that the nonsuit ought to be set aside, and a new trial granted.

The objection, at the trial was, that, as *Jenkins & Havens* had paid and taken up the notes, their negotiability had ceased ; and the two cases of *Blake* v. *Sewall,*(c) and *Boylston* v. *Greene,*(d) were produced at the Circuit, upon the authority of which the Judge allowed the objection, and ordered the nonsuit. The error of those cases consists in laying down the rule too broadly, and supposing that the negotiability of a note *absolutely* ceases, on its being paid. The rule is a qualified one, like that which relates to paper which is dishonoured, or over-due. In the latter case, it still continues negotiable, but all equities, between the original parties, remain.(e) After paying and taking up the note, the payees were fully remitted to their original rights, and held in their first capacity as *payees ;* and whether the maker pay it to them or to their assignee, must be immaterial to him. An indorsement in blank, authorises the holder to fill it up to himself. The cases to this point are cited by *Kent*, J. in *Conroy* v. *Warren ;*(f) and that authority decides, that where there are no suspicious circumstances, the Court will never, in such a case, inquire into the right of the plaintiff to sue. It is enough that he holds the note. *Beck* v. *Robley,*(g) upon the authority of which the cases of *Blake* v. *Sewall,* and *Boylston* v. *Greene,* in *Massachusetts*, were decided, stands upon the principle that some previous party might have been injured by the transfer. But *Huntington* is the maker of these notes, and ought to pay them ; and could not *Jenkins & Havens,* holding them in their original capacity, transfer them to the plaintiff ? The case of *Callow* v. *Lawrence,* decides this very point, and gives to *Beck* v. *Robly* its proper qualification ; and it is remarkable, that the two cases from *Mass. Rep.* have, upon a more enlightened view of the subject, in that very state, been overruled, or restricted to the

principle, as it is to be found in *Callow* v. *Lawrence.* This was done in *Guild* v. *Eager & another.*(h) The defendant has a full right, in this case, to all the defence which can exist, or could ever have existed. He is, consequently, not injured by the form of the action.

HAVENS
v.
HUNTINGTON.

(h) 17 *Mass.* *Rep.* 615.

*G. Griffin,* contra. 1. The notes on which the action is founded, having been once paid, ceased to be negotiable, and could not, therefore, be transferred to the plaintiff, so as to enable him to sustain an action in his own name.

2. *Jenkins* & *Havens* could not have maintained any action on the notes themselves, as they were accommodation notes, though they might for the *money paid ;* but the right of action for money paid is not negotiable.

There are, in reality, substantial reasons why this action should have been brought in the name of *Jenkins* & *Havens,* instead of *Havens* individually. It is conceded, that if the defendant may, by possibility, be injured by this form of proceeding, the action cannot be sustained. Here is a notice of set off. Now suppose our right of set off to be against *Jenkins & Havens* jointly ; do they not defeat it by thus, of their own heads, declining to be plaintiffs, and throwing *Havens* forward as the sole party ? All the cases cited by the gentleman, steer clear of the real point in controversy. These are accommodation notes, endorsed and discounted for the benefit of *Huntington ;* so that, in truth, the endorsers were mere sureties for the defendant. *Jenkins & Havens* paid the money and took back the notes as endorsers. The cause of action was then properly money paid, laid out and expended—a mere chose in action, not assignable. Admit them restored to their original capacity ; what was this ? Not that of payees. They never could have counted upon these notes *as such.* They never were made and delivered *as promissory notes* to *Jenkins & Havens.* They differ, therefore, altogether from the case of notes given for a debt due to *Jenkins* & *Havens.* A payment would there remit them to their original situation as *endorsers.* Here it merely gives them a *new* right of action as sureties, which was created by the payment. They have stood all along in the relation of *mere sureties.*

But these notes are *functus officio*, without reference to the effect which may be produced upon any of the parties to them. They are so within the case of *Beck* v. *Robley*. That case was decided in the 14 *Geo.* 3 ; and being before the revolution, is binding upon this Court, notwithstanding the cases decided there since.

*Slosson*, in reply. *Jenkins* & *Havens* were not *mere sureties*. They became *sureties upon negotiable paper ;* and are entitled to all the benefit arising from the form in which the business was done. No authorities have been or can be cited against this doctrine. Being the beneficial owners, they are entitled to treat this paper *as promissory notes*, and transfer it accordingly. They became the substituted holders of the notes. Had a third person paid the note, and taken it from the bank, could not an action have been maintained upon it ? In *Callow* v. *Lawrence*, it was holden that one who takes up a note, becomes the purchaser, and may sue upon it as such. In *Beck* v. *Robley*, the right of action is denied upon the single ground of injury to *Hodgson*. *Huntington*, I repeat, cannot complain. He has every equitable defence by way of set off or otherwise ; and he may avail himself of it equally as if the suit were in the name of the payees.

WOODWORTH, J. The question in this case is, whether, after payment to the bank, the notes continued negotiable, and could be transferred to the plaintiff, so as to enable him to sustain an action in his own name ? The objection to the right of recovery is merely to the form of action. It is urged on this principle, that by payment of a bill or note, the contract of the parties to it ceases. It is not necessary to controvert this proposition, in order to decide the present cause. A remedy in this form, on the note itself, is certainly convenient ; and if it can be shown that no injury can arise by sustaining it, I should be inclined to uphold it, unless restrained by a uniform current of authority. The case of *Beck* v. *Robley*, (1 *H. Bl.* 89,) is relied on by the defendant's counsel as in point ; but it will be found, on ex-

amination, to be clearly distinguishable. The facts were these : *Brown* drew a bill of exchange upon *Robley*, payable to *Hodgson*, or order, which was accepted by *Robley*, and indorsed by *Hodgson*. Not being paid when due, *Hodgson* returned the bill, and *Brown* took it up, *Hodgson's* indorsement still remaining. *Brown* afterwards gave the bill to *Beck*, as a security for money. The jury found a verdict for the defendant, on the ground that the acceptor was discharged by *Brown's* taking up the bill, and that there was an end to its negotiability. The Court held the action not maintainable ; not on the ground, that where a bill comes back unpaid, and is taken up by the drawer, it ceases, in every case, to be a bill, but that the facts in that case required it so to be considered. This is evident from the expressions of Lord *Mansfield*, who observes, " if it were negotiable, *Hodgson* would be liable, for which there is no colour." The consequences that would follow from a different decision, could not be sanctioned. The payment by *Brown* to *Hodgson*, wholly exonerated the latter. It was the same thing as striking out his indorsement ; and if so, *Beck* could have no title to the bill. If, notwithstanding the payment to *Hodgson*, his indorsement passed the interest in the bill to *Beck*, it follows that he would be liable as an indorser—a proposition too absurd and unjust to be tolerated. The distinction, in the present case, is manifest. It is true, the indorsers here have taken up the note, as the drawer did in *Beck* v. *Robley* : they afterwards passed it, but on their own indorsement solely. The plaintiff derives his right from *Jenkins* & *Havens*, who ought to be liable as indorsers ; for it must be presumed they have received value for the transfer. Supposing *Havens* had indorsed this note, and *Jenkins* & *Havens* had paid him and taken it up, but omitted to strike out his name ; the holder could not recover on a count, stating the indorsement to him to have been made by *Havens*, because then the principle in *Beck* v. *Robley* would apply. The two cases would be alike. Here there are no interests of third persons to be affected, but in the manner prescribed by law. The note continued negotiable in the hands of *Jenkins* & *Havens*, by their own indorsement. If

they passed it, there is no reason why they should not be liable. In *Callow* v. *Lawrence*, (3 *M. & S.* 95,) the case was this : The drawer of a bill, payable to his own order, indorsed it to *Taylor*, who discounted it for him. *Taylor* indorsed it to *Bassett*. Upon the bill being dishonoured, the drawer paid the amount to *Bassett*, who struck out his own and *Taylor's* indorsement, and returned it to the drawer, who afterwards passed it to the plaintiff. It was held that he might recover against the acceptor. Lord *Ellenborough*, in that case, says, " If the drawer has paid the bill, he may sue the acceptor on that bill, and if, instead of suing the acceptor, he put it into circulation on his own indorsement only, it does not prejudice any of the other parties." He considered that *Pywell*, the drawer, became the purchaser of the bill when he passed it and took it up ; that it was not paid *animo solvendi*, in order to extinguish it, but only to relieve himself from the situation in which he stood upon the bill. All the Judges concurred in the opinion, that the case of *Beck* v. *Robley* was decided on the distinction I have laid down. In *Gomez Serra* v. *Berkley*, (1 *Wils.* 46,) the point in question seems to have been settled. There the payees of a promissory note, payable to them or order, indorsed it to the plaintiff, and afterwards paid the note and took it back, and then passed it a second time to the plaintiff. It was held that the plaintiff might recover against the maker ; for he was still liable to the payees, when they passed the note a second time to the plaintiff ; and that the plaintiff ought to stand in their place. The next objection is, that *Jenkins & Havens* could not have maintained an action on the notes themselves, as they were accommodation notes, though they may for the money paid. It will be conceded that *Jenkins & Havens* could not sustain an action on the notes, before payment at the bank. Previous to that there was no consideration, but becoming liable on the notes as indorsers, and it being their duty to take them up, the money paid operated as a purchase of the security; and from that moment it ceased to be an accommodation note, indorsed by them for the defendant, but a valid note to *Jenkins & Havens*, founded on good consideration. I am of opinion, that the plaintiff is entitled to judgment.

SUTHERLAND, J.    The only question is, whether the notes ceased to be negotiable in consequence of having been dishonoured by the maker, and paid by the indorsers.

All the doubt that exists upon this point, has grown out of the case of *Beck* v. *Robley*, (1 *H. Bl. Rep.* 89, *note*.) And all the cases, in which the negotiability of a note, or bill of exchange, circumstanced like these, has been called in question, put themselves upon the authority of that case.

That was the case of a bill of exchange, drawn by one *Brown* upon *Robley*, in favour of one *Hodgson*, accepted by *Robley*, and endorsed by *Hodgson*.    Not being paid by the acceptor, when due, *Brown*, the drawer, took it up, *Hodgson's* endorsement being still upon it.    *Brown* subsequently passed it to *Beck*, the plaintiff.    It was held, by Lord *Mansfield*, that the drawer, after having paid the bill, could not again put it in circulation ; because, by so doing, *Hodgson*, the payee and endorser, would be subjected to a suit upon it, which clearly ought not to be.

This case has always been considered, in *England*, as standing upon its own particular grounds ; and has never been held to decide, that a bill or note is not negotiable after it becomes due, and has been taken up, unless by putting it in circulation again : some party to it might be subjected to a suit, who ought not to pay it.

The case of *Callow* v. *Lawrence*, (3 *M.* & *S.* 94) is decisive upon this point.    There a bill of exchange was drawn by one *Pywell*, payable to his own order, upon, and accepted by *Lawrence*, the defendant.    *Pywell* endorsed it to one *Taylor*, and *Taylor* to one *Bennett*, who held it when it became due.    Not having been taken up by *Lawrence*, the acceptor, *Pywell*, the drawer and first endorser, paid it ; and, striking out the subsequent endorsements of *Taylor* and *Bennett*, passed it to *Callow*, the plaintiff.

It was held, by all the Judges, that the fact of the bill having been taken up by the drawer, did not destroy its negotiability : that the test was, *whether it could be put in circulation again, without prejudice to any party who ought not to pay it* : and that, as the drawer was also the first endorser of the bill, its negotiability could be preserved,

without prejudice to the subsequent endorsers, by striking out their names, and leaving his own upon it. The case of *Gomez Serra* v. *Berkley*, (1 *Wils.* 46) is to the same point.

This question was very fully discussed in the Superior Court of *Massachusetts*, in *Guild* v. *Eager et al.* (17 *Mass. Rep.* 615,) and the principle of *Callow* v. *Lawrence* was sanctioned and adopted, although two decisions of a contrary character had been made in that Court, under a misapprehension of the case of *Beck* v. *Robley.*

It is clear, then, upon the authority of these cases, that the negotiability of the notes upon which this suit was brought, was not impaired by the fact of their having been paid and taken up by *Jenkins & Havens*. They were the payees and sole endorsers of the notes ; and no party, who was not at all events bound to pay them, could be sued or molested, in consequence of their being again put in circulation.

If, as between *Jenkins & Havens* and the defendant, there was any fraud in the transfer of these notes, or if he has any ground of defence against them, he can avail himself of it against the plaintiff; for, having taken the notes after they became due, he took them subject to every defence which existed between the original parties at the time of their transfer to him. (*Brown* v. *Davies*, 3 *T. R.* 80. *Taylor* v. *Mather*, id. 83, *note. Johnson* v. *Bloodgood*, 1 *John. Cas.* 51. 2 *Caines' Cas. in Err.* 303. *Sebring* v. *Rathbun*, 1 *John. Cas.* 331. *Lansing* v. *Gaine & Ten Eyck*, 2 *John. Rep.* 306. *O'Callaghan* v. *Sawyer*, 5 *John. Rep.* 118. *Lansing* v. *Lansing*, 8 *John. Rep.* 454.)

The nonsuit must, therefore, be set aside, and a new trial granted, with costs to abide the event of the suit.

SAVAGE, Ch. J. concurred.

*Rule accordingly.*