### NELSON HOWELL v. McCRACKEN & HOWELL.

*Vendor and Vendee—Contract of Purchase—Judgment—Lappage—Constructive Possession.*

1. Vendee, in contract for purchase of land, executed notes to vendor who endorsed them to another, and, upon judgment recovered against him alone, paid the same and had the notes reässigned to him (the vendor), and then, he transferred them to the plaintiff who sues the vendee to recover the amount ; *Held* that the action is properly brought.

2. The judgment on the notes against the endorser, is a judgment on the contract of endorsement, and the obligation under the contract of purchase remains in full force against the vendee debtor.

3. Where the deeds of A and B cover the territory in dispute (as represented in diagram in *Logan* v. *Fitzgerald, ante,* 308) and B is in actual possession, under color of title, of a part of the lappage enclosed under fence, he is constructively in possession of the unenclosed part ; but where the adverse claimant enters upon the part outside of the enclosure, under a claim of title, and exercises repeated acts of ownership over it, for the purposes for which the land is susceptible, the continuity of such constructive possession is destroyed, and B's claim to the unenclosed part, defeated.

(*Casey* v. *Harrison,* 2 Dev., 244 ; *Phifer* v. *Giles, Ib.,* 498 ; *Dickson* v. *Van Norden,* 1 Car. L. R., 497 ; *Price* v. *Sharp,* 2 Ired., 417, cited and approved.)

CIVIL ACTION tried at Spring Term, 1882, of HAYWOOD Superior Court, before *Gilliam, J.*

The defendants appealed from the judgment of the court below.

*Mr. George A. Shuford,* for plaintiff.
*Mr. James H. Merrimon,* for defendants.

SMITH, C. J.   On the 10th day of October, 1876, a contract was entered into between one Mark Howell and the defendant for the sale and purchase of a tract of land of the former, pursuant to which the vendor in a title-bond covenanted to convey an estate in fee therein on payment of the purchase money, retaining the same as a security therefor, and the defendant vendee executed and delivered his three several notes under seal in the sums of $250, $300 and $325; parts of the deferred payment, bearing interest from date and due at one, two and three years.   The notes were duly and for value endorsed by the payee to the plaintiff, who on April 11th, 1878, brought his action against the defendant on the note then matured, and on September 6th, 1880, on the two other notes, to recover the moneys due on them.

These two actions pending in the superior court, were consolidated by a consent order and tried as one suit.

The defence set up was that the vendor had not title to a part of the land embraced in the contract, of about ten acres in extent, and there should be an abatement of the sum contracted to be paid, corresponding with the value of that to which the vendor was unable to make title; and further, that the action was misconceived as to the last maturing notes, and should have been for money paid by the endorser for the use of the principal debtor on the implied contract of surety-ship.

Three issues were submitted to the jury, the first and material one of which is in these words :

Did Mark Howell, and others under whom he claims, hold continuous exclusive adverse possession of the lappage, up to the Russell McCracken fence, for seven years before June 11, 1877 ? to which the jury responded, " yes."

The other issues were as to the value of the entire lappage, and of the part enclosed and under fence.

On the trial it appeared in evidence that Mark Howell, the vendor, had, previous to his assignment to the plaintiff, endorsed the notes maturing in 1878 and 1879, after maturity to one E. Sluder who brought suit thereon in said court against the defendant and the endorser, and having entered a *nol. pros.* (miscalled a non-suit in the record) as to the principal debtor, recovered judgment against the endorser at spring term, 1880. On May 10th thereafter, the said Mark Howell satisfied the judgment rendered against himself by payment to Sluder who at the same time re-assigned and delivered the notes to said Howell, and he thereafter transferred them to the present plaintiff.

It further appeared that the vendor held the land described in the contract, and of which the ten acres in dispute forms a part, under a grant from the state issued in 1851, while the adversary claim was derived under a deed executed in 1858 to one W. C. Hill, and possession thereunder for more than seven years.

The disputed territory is within the boundaries of both deeds, and the said Hill, it is admitted, has been in actual possession of about three-fourths of an acre of the lappage enclosed under fence, so as to divest the title to so much of it out of the grantee and transfer it to said Hill. The residue of the ten acres outside of the enclosure was wood-land, and while it is not stated that Hill at any time entered thereon or exercised any act of ownership, the grantee (Howell) did continuously during the interval enter upon the

26

wood-land and get and remove fire-wood, rails and boards from the growing timber at his pleasure.

The defendants' contention was that the occupation of the enclosed part was a constructive possession, extending to the boundaries of the land described in the deed to Hill, and perfected his title to the whole lappage.

The court ruled that the action was properly brought, and submitted to the jury as evidence, to be considered by them upon the question of possession, the use made of the woods of the unenclosed part of the disputed lappage by the owner, " for all the purposes for which such land was sus- ceptible," in its present condition up to the boundary of the grant.

1. We concur with His Honor that the judgment on the notes against the endorser only extinguished and merged the cause of action arising upon his contract of endorse- ment, leaving in full force the contract obligation of the debtor to pay the debt.

It is familiar learning that an endorser may take up a bill or note and have recourse on the acceptor or maker, and any endorsers whose liabilities are prior to his own, while subsequent endorsers are discharged by such payment. *Casey* v. *Harrison*, 2 Dev., 244; *Phifer* v. *Giles, Ib.*, 498; 2 Dan. Neg. Ins., § 1204; *Dickinson* v. *Van Norden*, 1 Car. Law Rep., 497 (109); *Havens* v. *Huntington*, 1 Cow., 387; *Mead* v. *Small*, 2 Greenl., 207; *Gormez* v. *Berkley*, 1 Will., 47; *Price* v. *Sharp*, 2 Ired , 417.

We see no reason why a judgment upon the contract of endorsement against the party endorsing only, and its sub- sequent satisfaction by payment to the endorsee suing and recovering, should have any different effect upon the ante- cedent liabilities of others, than that which is produced by a payment without suit. In both cases the contract of the endorsee is discharged, and in each the contract, except as

to subsequent endorsements, remains in full force as to the others.

But if it were otherwise, the moneys due from the defendant, whether upon his express promise to pay or his implied contract to indemnify the surety, have been transferred to the plaintiff, and he being entitled thereto can alone sue for the recovery under the Code.. The transfer of the notes means an assignment of the interest of the assignor in them, direct or indirect, to the plaintiff.

2. If there is any error in the charge, it is an error favorable to the appellant, and he cannot complain. The authorities are numerous and ample that a possession under color of title, to divest the estate of the owner, must be adverse, open and continuous, and without interruption from the owner. Whether the acts of Howell would in themselves constitute a possession sufficient to ripen a defective into a perfect title, each is an entry under a claim of title, and an assertion of ownership, and breaks the continuity of the constructive possession of Hill outside of his enclosure, and defeats his claim to this part of the land. The repeated exercise of ownership in using the trees for his own purposes by Howell at his will, and the abstaining of Hill from any interference, certainly must have the effect of preserving the better title in the former.

" A seizin once lost by a 'disseizin," remarks a writer of authority, " may be regained by the disseizee by a re-entry upon the land without turning the person in the actual seizin out of possession. * * * The re-entry, in order to regain a seizin, must be done with that intent, and must be made upon some part of the land. It is enough, however, that the owner goes upon the land with the intent thereby to gain his seizin. Wash., Real. Prop., 124. It may also be added that acts of ownership upon the land is the strongest evidence of the intent with which the entry is made. Again, the same author says : " Every element which

goes to make a possession adverse, must occur, or it will not confer a title." "And if," in the language of the court of Pennsylvania, "there be one element more distinctly material than another in conferring title, when all requisites are so, it is the existence of a continuous adverse possession for twenty-one years." An actual interruption of the possession is fatal to the claim under it. *Ibid*, 124.

The cases relied on for defendant are not applicable, since the true owner did not by entry revest possession in himself.

It is plain that no error has been committed against the appellant in either ruling, and the judgment must be affirmed.

No error.                                    Affirmed.