A. L. LOGAN v. W. W. FITZGERALD, et al.

*Entry on Land—Possession.*

1. If the true owner enters on land, the possession at once follows the title, and both title and possession are then in him. A possession thus acquired by the true owner, although he enters under a mistaken and erroneous claim, nevertheless, is supplied by the legal estate, and the owner, in law, holds by his real, and not by his pretended title.

2. When the true owner enters, as an assertion of his right, it is not necessary to expel the occupant in possession at the time of such entry.

3. Where the defendant was in actual possession of a part of the *locus in quo*, and had constructive possession of the rest, and the true owner, the plaintiff, enters upon the part of which the possession was constructive; *Held*, that such entry at once vests the possession in him, and seven years must elapse from such entry, before the defendant can acquire title by lapse of time.

(*Staton* v. *Mullis, ante*, 623; *Howell* v. *McCracken*, 87 N. C., 399; *Gaylord* v. *Respass, ante*, 553, cited and approved).

CIVIL ACTION, for the recovery of land, heard before *Graves, Judge*, and a jury, at Spring Term, 1884, of BUNCOMBE Superior Court.

It is conceded that the land in controversy belongs to the plaintiff by virtue of the deeds under which he claims, unless the title thereto has been divested and transferred to the defendant Lorena Ramsay, of whom the other defendants are tenants, by virtue of possession accompanied with color of title for the prescribed period of time. To sustain the defence, it was shown that Jacob Ramsay resided on land adjoining that in dispute, just south of the line 7, 8, 6, marked on the plat, until his death in 1844, since which his son William Ramsay continued the possession during his life and at his death devised the same, in 1863, to said Lorena, his surviving wife, designating it in the will as "all that part and parcel of land on which I now live, known and described as the Jacob Ramsay farm."

The defendants also introduced a deed executed in October, 1870, and having the signatures of eleven grantors, of whom five are the wives of five others so signing, in which their respective interests in the land therein described by marks and bounds are conveyed to the said Lorena Ramsay. In 1862 the tract was claimed by William Ramsay, and at his instance was surveyed and the lines run by Blackstock, and the course and distance as ascertained from his field notes are pursued in describing the land in the deed, and include that in dispute, with the other that had been in the occupancy of the Ramsays, father and son. The divisional line is designated in the plat as 6, B, A, J, I, H, G, F, E, D. The deed was proved to have been executed by all whose names are attached, except the five *femes covert*, and upon this probate admitted to registration in March, 1880.

It was in proof that Jacob Ramsay cleared and enclosed several acres north of the line 8, C, on which he built a stable, and these were used and cultivated by both himself and his son during their respective lives, a period of more than forty years. The devisee Lorena, has since her husband's death, continued to cultivate and raise crops on the enclosed territory, enlarging it by clearing other contiguous land, until at the commencement of the suit there were from ten to fifteen acres under fence and in use.

During her residence on the devised tract, she has taken from the disputed part, outside of the enclosure, whatever and whenever required for use on the plantation, without hinderance from any one, timber for wood, rails, boards, and saw logs, and this up to the controverted boundary. If any adverse claimant removed any timber therefrom the fact was not known to her.

On the other hand, there was proof offered by the plaintiff, that a witness now forty-four years of age, when a boy, with others acting under the directions of his father, a mill owner, got material for the repair of the mill, when repairs were needed, from land south of the ridge-field at the asserted divisional line. That a former owner in 1868 got saw stocks on lands south of the ridge-field fence, and that the plaintiff after his contract of purchase in 1876 got wood and timber occasionally thereon, and directed his tenants to continue to get it after they had been notified not to do so. The disputed territory outside of that under fence is woodland, and if cleared, fit for agricultural uses.

The court instructed the jury upon the matter covered by the instructions asked, which are not necessary to be set out, as follows:

"The defendant admits that the plaintiff is the owner of the land in dispute, unless she has shown that she is the owner by color of title and adverse possession. Possession under color of title, to divest the estate of the owner, must be adverse, open and continuous, and without interruption from the owner. If the jury believe, from the evidence, that the plaintiff, and those under whom he claims, did continuously enter upon the woodland of the disputed territory, outside of the defendant's actual possession on said disputed territory, and get and remove the timber therefrom at his pleasure, and that he and those under whom he claims, continuously did these acts *between the date when defendant's actual possession under color of title shown by her began* and the commencement of this action, and that the plaintiff and those under whom he claims did these acts under claim of title, then each was an entry under a claim of title, and

an assertion of ownership, and if the jury shall believe that such
acts were done without interference from defendant, they had the
effect to break the continuity of the constructive possession of
defendant, outside of her actual possession, and to defeat her
claim to all the disputed territory of which she did not have the
actual possession, if the jury shall believe there was such portion.
The repeated exercise of ownership, in using the trees for their
own purposes by the plaintiff and those under whom he claims,
if the jury shall find from the evidence, that there were such
acts of ownership, and the abstaining of defendants from any
interference, if the jury shall find that the defendant did abstain
from any interference, certainly must have the effect of preserv-
ing the plaintiff's title to all of that portion of the disputed ter-
ritory of which the defendant did not have the actual possession,
if there was such portion." Defendant excepted.

The judge, in charging the jury, read over the testimony of
the witnesses as he had understood it and written it down, but
he told the jury that he had only written it as he understood it,
and that they were not bound by his recollection of it, but must
be the sole judges themselves as to what the witnesses had
sworn to.

The jury, in response to the issues submitted to them, re-
turned their verdict in these words: "We give the defendant all
the land she has under fence. We give to the plaintiff all the
rest of the disputed land and no damages." And the court ren-
dered judgment accordingly for the plaintiff. From the judg-
ment the defendant appealed.

*Mr. J. H. Merrimon,* for the plaintiff.
*Mr. C. A. Moore,* for the defendant.

SMITH, C. J. (after stating the facts). Assuming the acts of
ownership exercised upon and over the disputed territory outside
of the enclosure and up to her claimed northern boundary, as
run and marked by Blackstock, to have been so numerous and

frequent and for so long a period, as to constitute a possession, as defined in the opinion in *Staton* v. *Mullis, ante,* 623, it is manifest that such possession to be followed by the legal consequences attributed to it, must not have been interrupted during the prescribed time by the entry of the true owner, as of right, upon the premises, and his exercising similar authority. We have reference to land outside the enclosure, since title to that within seems from the long actual occupation by the defendant and her predecessors in interest, even without any written instrument, to be beyond dispute in the defendant. This does not aid the possession set up to that in controversy, covered by the conflicting claims. If the real owner does enter upon this outside space, the possession at once follows the title, and both title and possession are then in him; so that the continuity of the other possession being broken, when resumed as a new starting point, it must extend over seven years to produce the required result, as if there had been none before. The instruction to the jury was as favorable to the case of the defendant as she could reasonably require; for the entry necessary to interrupt her possession, according to the charge, must have been under a claim of superior title, which admits of an interpretation that more is required than the entry itself and the acts done upon the land, such as an assertion of a right thereto at the time of entering. If this be the meaning, the charge is open to complaint from the plaintiff, for an entry of an owner of land, as of right and not by permission, is itself an assertion of claim and recovery of possession of all that is not in the actual, as distinguished from the constructive, possession of the wrongful occupant.

In the expressive language of the Court, which we have quoted in *Gaylord* v. *Respass, ante,* 553, in the opinion delivered in *Daniel* v. *Woodruff,* 10 M. & W., (Ex.) 631, " when a party having right of entry enters, it is not competent for him to repudiate any rights he may possess, and to say he has entered as a trespasser, or by some other than his real title. As soon as he has entered *he is possessed,* whether he will or no, by virtue

of every title which he had in him and could assert by entry." These remarks, of course, have reference to an entry made in the *exercise of a right,* which, however misconceived and not within the declared or unexpressed intent, annexes the recovered possession to the title which is in the party. A possession thus acquired by the owner who may enter upon a mistaken and erroneous claim, nevertheless, is supplied by the legal estate, and the owner, in law, retains by virtue of his real, and not misapprehended right. Such re-entry puts an end to the constructive possession, and defeats its operation as a bar thereto. It is enough that the owner goes upon his own land as an assertion of his right as the owner, and it is not necessary to expel the occupant of the portion which is in his actual possession. *Howell* v. *McCracken,* 87 N. C., 399.

We must understand there was evidence of interrupting entries made upon the land, to have the effect ascribed to them in the charge, in the absence of any exception based upon the absence of evidence, and especially since the instruction asked was that no such *continuous acts* of the plaintiff, showing a claim of ownership, had been proved "to break the continuity of the defendant's constructive possession," not that no successive entries by the plaintiff were in proof.

It must be declared there is no error in the record and the judgment must be affirmed.

    No error.                               Affirmed.