W. P. ROBERTS et al. v. RICHMOND PRESTON.

*Boundary—Evidence—Right of Owner to Enter Upon Land—Action of Trespass.*

1. A deed, made in 1863, and under which defendant claimed, described the land as " beginning on the sound, at a ditch." The plaintiff contended that this beginning was at A. where a ditch enters the sound; the defendant contended that it was at F, where there is now no ditch. A surveyor testified that he had surveyed the line claimed by defendant; that if a ditch had entered the sound at F in 1863, it would be hard to distinguish it now; that he had located F as the beginning corner, by deed to adjoining tract. There was evidence that there was a ditch along the line F H; that it approached within eighty yards of F, where a swamp intervened; that said ditch seemed to have been cut for a drain, but was not now visible at F; that nails in certain gate-posts and trees, marking a line of water-fence, were found in 1887, running from the marsh to the sound, in line with the ditch: *Held*, that there was sufficient evidence to warrant the finding of the jury that the beginning point was at F.

2. The owner of land has the right to enter peaceably on it as against an occupant having no title or right of possession; and, having so entered, may put any person in possession of the land, or any part of it, under him, and may do with it whatever he may lawfully do with his own property.

3. A person in wrongful possession of land cannot maintain trespass against the lawful owner, having entered peaceably, or against those in possession under him.

This was a CIVIL ACTION, tried before *Boykin, J.,* at Spring Term, 1889, of the Superior Court of CHOWAN County.

The purpose of this action is to recover damages for alleged trespasses of the defendant on the land specified in the complaint.

The following is so much of the case settled on appeal as need be reported:

Both parties claim the land in controversy under Mills Roberts, who owned two contiguous farms, shown on the map and designated "Long Lane" and "Long Beach."

In 1863, by deed, Mills Roberts sold part of said land to Merriman & Hughes. The land so sold afterwards became the property of one Hettrick. It was agreed on the trial that defendant Preston, by contract, had succeeded to all his rights to enter and cut the timber on the land conveyed in the deed to Merriman & Hughes. It was likewise agreed that if the *locus in quo* did not belong to the plaintiffs, it was the property of Hettrick when he entered into the contract with the defendant.

All the land comprising the said two farms, except that part sold to Merriman & Hughes, upon the death of Mills Roberts, descended to the plaintiffs, his heirs at law.

One question in dispute was, What is the eastern boundary of the land sold to Merriman & Hughes?

The plaintiffs insist that it is represented by the broken line, *A, B, C, D, E.* The defendant that it is represented by the dotted line, *F, G, H, K, L, N.* Between these two lines, it is alleged, the trespass was committed.

The plaintiffs introduced evidence tending to show that there was a ditch from A to B. There was evidence on the part of the defendant to the effect that there was a ditch from an old gate-post to a point near F; that it approached

within eighty yards of that point, F, when a swamp, that may have obscured the line of the ditch as it formerly ran, intervened; that there was also a sand-bar, caused by the ebb and flow of the tide, immediately upon the sound; that the ditch aforesaid seemed to have been cut for a drain, but was not now visible at F; that nails in certain posts of a gate and trees marked, marking a line of water-fence, were found when a survey was made, under order of the Court, in this cause in 1887, running from the edge of the marsh to the sound in line with the ditch. There was a gully at F, through which the water flowed from the sound into the marsh, and again from the marsh to the sound.

There was evidence tending to show that the only ditch *now* opening into the sound is at A, which is near a brick-kiln, and at a point near Long Beach Fishery. One of the calls in the deed from Roberts to Merriman & Hughes is "up the swamp to the Roberts-Benbury line." Much of the evidence introduced was with the view of locating the original "Benbury" line. To establish the line plaintiffs introduced the deed of Richard B. Benbury, under whom Mills Roberts claimed, dated in 1843, conveying to Alexander Cheshire part of his land, afterwards known as "Long Beach"; also deed of Alexander Cheshire to James Norcom, Jr., in 1844, conveying same land. The will of Richard Benbury was also put in evidence, it having been probated in 1844, under certain proceedings, duly introduced, the heirs of Mills Roberts became the purchasers of the remaining lands of Richard B. Benbury.

One Winslow, a surveyor, testified that he was familiar with the land in dispute, and had surveyed the line claimed by defendants from the sound at F to the Edenton road; that he knew the marsh between F and where the ditch along the line F H is plainly visible near the sound; that if a ditch had ever entered the sound at F, through the swamp or marsh in 1864, it would be hard to distinguish it

now. He testified that he found a gum and cypress at F in 1877, and that the stumps are there now. There were two gate-posts on line F H. He says: "F H is the Roberts-Benbury line." He further testified that he had located F as the beginning called for in the deed to Merriman & Hughes by certain surveys made under deed for adjoining tracts, and by the above named deed itself.

Dr. Leary testified that he was born on a farm adjoining the lands in dispute. Joseph C. Benbury owned "Long Lane" farm then. E H was then known as the line; there was a road and a gate on line F H; there was a ditch along line F H, which was the dividing line. Richard Benbury owned "Long Lane" after Joseph C. Benbury's death. The Cheshire fishery field is between A, B, G, F; that the line N F was the western boundary of the Roberts-Benbury farm, and that the Cheshire fishery field had never been a part of the Roberts-Benbury farm.

M. H. Hughes testified that if the land within the lines A, B, G, F was the Cheshire fishery field, then F G would necessarily be the extreme western ditch on the Roberts-Benbury farm.

There was evidence tending to show that the gate opening into the Cheshire fishery field was on the line F G H, and that this line is the dividing line between the Roberts-Benbury farm and Cheshire fishery field.

The plaintiffs admitted that the Cheshire fishery field, wherever located, was included within the boundaries of the deed from Mills Roberts to Merriman & Hughes. It was admitted that there was no ditch between A B and F G, running towards the sound.

One Spruill testified that, on one occasion, Mills Roberts, the owner of "Long Lane," abused him for pushing down the fence on line F G H, and stated to him that this was the dividing line between "Long Lane" and the "Cheshire fishery" field.

The defendant contended that it was immaterial whether the ditch at F was now visible or not, arguing that in every respect, except its emptying into the sound, the description of the deed was met, and insisting that time, and the ebb and flow of the tides, and the consequent deepening of the marsh, had destroyed it.

The plaintiffs requested the Court to charge the jury that " in locating the line of the land conveyed by Mills Roberts to Merriman & Hughes, under whom defendant claims, the jury must begin on the sound at a ditch, and that a ditch seventy-five yards from the sound, separated from it by a swamp and sand-bar, will not satisfy the beginning called for in that deed." The Court refused, and instructed the jury " that, to ascertain the beginning in that deed, they must locate a ditch on the sound in 1863, not now, according to the calls and descriptions of the said deed, having due regard to the other objects referred to therein by way of identifying the said beginning; and if it should be found that there is not now a ditch at F, the jury must determine," said the Court, " as above instructed, whether there was such ditch surrounded by objects conforming to those mentioned in the deed in 1863, which has been destroyed by the lapse of time, or the ebb and flow of the tides erecting the sand-bar and changing the bed of the swamp through which the said ditch is claimed to have run."

Plaintiffs excepted, because, as they insisted, there was no evidence that there had ever been any ditch at F.

There was evidence that, from 1863 to the beginning of this suit, Mills Roberts, and those under whom he claimed, were in the actual possession of certain parts of the *locus in quo,* a part of the time in possession of the entire tract between *A, B, G, F,* cultivating the same, and exercising numerous acts of ownership over it. Some weeks before the entry of the defendant Preston, Hettrick had entered upon the land and taken possession. This was in May, 1887,

according to his evidence, and before Preston built his tramway and prepared his lumber yard. He testified that he entered, posted the land, and cut timber on it before the entry of Preston, claiming title under his deed therefor. He said that when he entered, the land was not cultivated, or used in any way by any one, except a small part was used by a tenant, or tenants, of plaintiffs, around their houses which they occupied.

Preston testified that when he entered upon the land, Hettrick was in possession, claiming the same, had timber cut thereon at the time, and that he, Preston, cut timber thereon, Hettrick having full knowledge thereof. He further testified that he constructed a tramway thereon after his entry, and that one Rooks, who had become plaintiffs' tenant prior to Hettrick's entry, gave him permission to run his tramway through his, Rooks', enclosure. This was denied by Rooks, who continued his possession as aforesaid until after the bringing of this suit.

The plaintiffs requested the Court to charge the jury as follows:

1. Whether plaintiffs have proven title or not to the land in controversy, yet if they were in the actual possession of the land, or any part of it, and the defendant, while they were there in possession of the land, entered upon the land so in their possession, and built a tramway or cut down trees without the plaintiffs' permission, he was guilty of trespass, as charged in the complaint, and the first issue must be found Yes. This was given by the Court, with the qualification, unless the jury find from the evidence that at the time of Preston's entry, Hettrick was the owner of said land, had previously entered thereon, and taken possession thereof, and was at the time of Preston's entry in actual possession, and had authorized Preston to enter, in which event the response would be No. Plaintiffs excepted.

4. If the plaintiffs had the actual possession by themselves, or their tenants, of the land upon which the alleged trespasses were committed, Hettrick had no right, although he was the owner of the land, to commit the trespasses alleged. The going upon the land by Hettrick, while thus in possession of plaintiffs, without their consent, and posting the same. or cutting down trees, was not such a possession as ousted plaintiffs' possession, or empowered Hettrick to authorize the said act of Preston.

The Court charged the jury as follows:

" If the plaintiffs had the actual possession by themselves, or their tenants, of the land upon which the alleged trespasses were committed, Hettrick had no right, although he was the owner of the land, to authorize defendant Preston to commit the acts alleged, unless, prior to Preston's entry, Hettrick had gone on said land and was occupying the same, under his claim of title, at the time Preston so entered, and authorized the entry. But if Hettrick should be found to be the owner of the *locus in quo*, and was in the actual possession of the same under his claim of title, engaged in cutting timber, after having posted the same, when defendant Preston entered, and authorized the said entry and acts, plaintiffs cannot recover." Plaintiffs excepted.

The Court charged the jury, also:

1. That the owner of land, or any one under his direction, after possession has been acquired by the said owner, has the right to enter peaceably on it, as against an occupant without title or right to the possession.

2. That when the owner of land enters upon it for the purpose of taking possession, his possession and title unite, and he cannot be sued as a trespasser by a person who is on the land having no title or right of possession. Plaintiffs excepted.

106—27

The following is a diagram of the premises in question:

There was a verdict and judgment thereupon for the defendant, and the plaintiff, having excepted, appealed to this Court.

*Mr. W. D. Pruden,* for plaintiffs.

*Messrs. C. M. Busbee* and *W. M. Bond* (by brief), for defendant.

MERRIMON, C. J.—after stating the facts: The plaintiffs claim as the heirs of Mills Roberts, deceased, and defendant justifies by virtue of a deed executed by him on the 18th

day of September, 1863, to W. H. Hughes and another, which specified and described the land thereby conveyed as "beginning *on the sound at a ditch* in said Roberts-Benberry farm; thence up the ditch to the fence; thence along the fence outside to the edge of the swamp; thence up the swamp to said Roberts-Benberry line," &c. The land is further described "as a certain tract or parcel of land and the Long Beach fishery, on Albemarle sound," &c. The evidence went to show that there is a ditch entering the sound at "A" on the diagram, and the plaintiffs contend that the beginning corner mentioned in the deed is there. The defendant contends that the beginning corner is at "F," on the diagram; that there was a ditch there in 1863, at the time the deed mentioned was executed. The plaintiff insisted that there was no evidence to go to the jury to prove that fact, and the Court held otherwise, and we think properly.

The testimony of the witnesses Winston, Leary and Hughes, all taken together, certainly tended to prove that a ditch probably was at the point on the sound designated as "F" on the diagram. And this is strengthened in that, as stated in the case settled, "there was evidence on the part of the defendant to the effect that there was a ditch from an old gate-post to a point near 'F'; that it approached within eighty yards of that point, 'F,' when a swamp, that may have obscured the line of the ditch as it formerly ran, intervened; that there was also a sand-bar, caused by the ebb and flow of the tide, immediately upon the sound; that the ditch aforesaid seemed to have been cut for a drain, but was not now visible at 'F'; that nails in certain posts of a gate and trees, marking a line of water-fence, were found when a survey was made, under order of the Court in this cause in 1887, running from the edge of the marsh *to the sound, in line with the ditch.* There was a gully at 'F,' through which the water flowed from the sound into the marsh, and again from the marsh to the sound." Such evidence, taken in all

its reasonable bearings, certainly pointed, with no little force, to a ditch at " F," in 1863. It was evidence for the purpose of proving that a ditch was there then, to go to the jury, and it was their province to determine its weight and what inference they would draw from it as a whole, in respect to the material descriptive fact in question.

There was evidence going to prove that Hettrick, under whom the defendant claims and justifies, had title to the land in question at and before the time of the alleged trespasses, and that he then had actual possession and control thereof, and that while he was so in possession, he allowed the defendant to cut timber, and do other things complained .of on the land. There was also evidence to the contrary.

Unquestionably, the owner of land having the right of possession may peaceably enter upon it, while another person, who has no right, has previously taken, and has, possession thereof. When the lawful owner thus enters and takes possession, the possession extends to the whole tract unless a person is in the wrongful possession of some part, in which case, his wrongful possession is confined to the part of which he has actual possession. When the lawful owner thus takes possession, the law favors and helps him in the assertion of his right. Thus he has perfect title, and he may do whatever he may lawfully do with his own property. He cannot be treated as a trespasser in such case. He may put his agents and servants in possession of the land, or any part of it, under him, and may authorize other persons to cut timber, construct roads, and do other things on his land, and have the right to ingress, egress and regress. Nor can the person having such wrongful possession maintain trespass in such case against the lawful owner, or those in possession under him, or cutting timber, and doing other like things on the land by his permission or direction. This is so, because he goes into and has possession of right. *Ring* v. *King*, 4 Dev. & Bat , 164; *Tredwell* v. *Reddick*, 1

Ired., 56; *Everett* v. *Smith*, Busb., 303; *White* v. *Cooper*, 8 Jones, 48; *Gadsby* v. *Dyer*, 91 N. C., 311; *Logan* v. *Fitzgerald*, 92 N. C., 644; *Gaylord* v. *Respass*, *ibid.*, 553; *Nixon* v. *Williams*, 95 N. C., 103.

The Court, therefore, properly declined to give the jury instructions as specially demanded by the plaintiffs, without modification. The conflicting evidence presented the case before the jury in two distinct aspects: one favorable to the plaintiffs, the other favorable to the defendant. As to that favorable to the former, the instructions given were quite as favorable as they were entitled to have. The Court properly went further, and gave instructions as to the aspect favorable to the defendant. It would have been error not to have done so. Nor do we, for reasons already stated, perceive any error in the instructions so given. As we have seen, there was evidence of title to the land in controversy in Hettrick; that he had possession of the land, and that he authorized the defendant to cut the timber, &c. If this was true, the plaintiffs could not recover. It was in the province of the jury, under instructions from the Court, to determine the issues of fact.

What we have said disposes of all the exceptions.

Judgment affirmed.