Rueein, Chief-Justice.
 

 It is contended on the part of the defendant, that the evidence of the declarations of
 
 Sloan
 
 were incompetent; and upon that ground that the judgment ought to
 
 be
 
 reversed. The objection was not made in the Superior Court; and this court has not the means of knowing under what circumstances the evidence was received. It might have been by consent. The court is of opinion that it cannot be made here; and for that reason overrules it, without deciding on the validity of the reasons urged in support of it.
 

 The court likewise concurs in the opinion of the judge who tried the cause, that the overflowing the land by the mill pond, and the cutting of timber on it, do not singly or together, and by themselves, constitute a possession, on which the staute of limitations can operate.
 

 The overflowing of land by an act not done on it, but by stopping a water course below, on one’s own land, is not an ouster of the owner from the land overflowed. There is no entry, which is necessary to make a diseizen. The remedy for the injury is not trespass, but an action on the case for the consequential damages.
 
 (Howard
 
 v.
 
 Banks, 2 Bur.
 
 1113.) Hence, however
 
 *161
 
 long it may continue, it affords, of itself, only a presumption of a grant of the casement, and not of the conveyance of the land.
 

 The case of in-
 
 J' '320)
 
 — Grant
 
 v.
 
 v.
 
 Blount, (ante
 
 3
 
 vo1^
 
 aPF°ve<t
 

 Making Tur-b™an occupation of land which, if years”will perfect a defective paper
 

 The other question is not entirely clear of difficulty. The case docs not state the extent to which the timber was cut. But the court rejected all evidence of it; which must be taken, to have been upon the principle, that if carried to the utmost length, it -would be insufficient. There is much land in the State, of which nearly the whole value consists in the timber; its fertility not being sufficient to induce a prudent proprietor to erect habitations or clear a plantation on it. In such instances the timber is frequently all taken off; and it would not seem easy to give more positive evidence of asserted ownership and of enjoyment. On the other hand, any rule that could be bo laid, down would be so wanting in precision as to the extent to which the trespasses should be carried, to constitute an ouster, as to leave the whole subject in uncertainty. It is safest to require an actual occupation, such as residence or cultivation: something to make it emphatically the party’s close; which is in conformity to the ancient rule of the common law, and also to the application of it to our situation, as early made in this State, in the cases of
 
 Andrews
 
 v.
 
 Mulford,
 
 (1
 
 Hay.
 
 320) and
 
 Grant
 
 v.
 
 Winborne,
 
 (2
 
 Ib.
 
 56.) The case of
 
 Simpson
 
 v. Blount,
 
 (ante
 
 3
 
 vol. p.
 
 54.) has been relied on as an authority to the contrary. But that is an exception founded on necessity, and was so considered at the time. The land was swamp, of which no other use could be made in its natural state, but by taking off the timber; which was likened to cutting rushes annually in a marsh. There may be two other exceptions, founded on other grounds. An instance may be, tbe making of turpentine as practiced in the lower part of the State; which is an operation partaking perhaps, of the nature of cultivation. It cannot be pursued secretly, and does not consist of single acts of trespass, like cutting down trees, and carrying them away, but requires a continued attendance on the land for a considerable portion of the year, and from year to year, as the same
 
 *162
 
 trees are worked for several years in succession. But even that has not yet been judicially pronounced sufficient, as far as I am informed. In the case before the court the jan(j js 0f the character and quality presented by the general face of the country; and as to that we think the rule established.
 

 His Honor here stated the facts and charge above set forth, as to the possession of the defendant near the point B, and proceeded as follows:
 

 It is objected by the appellant, first: That this instruction is in itself erroneous; and secondly, that if the intention of the defendant is not to be unequivocally inferred from the possession proved of
 
 the small
 
 peicc, it might be from his other possession, and from the other acts of cutting timber, and overflowing the land; and therefore that the evidence to those points ought not to have been absolutely rejected.
 

 It seems to us that the rule is stated
 
 by the judge
 
 too strongly, at least, as applied to this case. The operation of the statute of limitations depends upon two tilings. The one is possession continued for seven years ; and the other the character of that possession — that it should be adverse. It has never been held, that the owner should actually know of the fact of possession; nor have actual knowledge of the nature or extent of the possess- or’s claim. It is presumed indeed that he will acquire the knowledge, and it is intended that he should. Hence nothing will bar him short of occupation, which is a thing notorious in its very nature, and that must be continued seven.years, in order to afford him, not that time to bring suit, for redress of a known injury, but full opportunity to discover the wrong. To the extent of the occupation there is,
 
 prima facie,
 
 no hardship in
 
 holding
 
 that is on a claim of title and adverse, and that the owner knew of it. Every man must be considered cognizant of his own title, the boundaries of his land, and of all possessions on it either by himself or others. Ordinarily, possession taken by one of another’s land, is of a part sufficient in quantity or value to show to the jury that the possession was taken adversely, and also to af
 
 *163
 
 ford unequivocal evidence to the other claimant of that intention. And as far as the actual occupation goes, it seems to furnish such evidence, in almost all cases. If indeed, two persons own adjoining lands, and one runs a fence so near the line as to induce the jury to believe that any slight encroachments were inadvertently made, and that it was the design to run on the line, the possession constituted by the enclosure, might be regarded as permissive, and could not be treated as adverse, even for the land within the fence, except as it furnished evidence of the line in a case of disputed boundary.— The line being admitted, it would not make a title, where a naked adverse possession will have that effect, because there was no intention to go beyond his deed, but an intention to keep within
 
 it;
 
 which by a mere mistake he has happened not to do.— But in this case, the defendant is really the owner of the land on both sides of his fence for a considerable ' distance, and for the residue of it claims the land on both sides under the same title, and (if that would make a difference,) does not appear to have had any knowledge of the title of the lessor of the plaintiff. Can it be doubted that he intended to assert a title to all the land within his fence? He had distinct deeds for separate parts of the land, it is true. But he had other actual possessions of parts of both tracts lying on each side of the line, which had become one tract to
 
 him;
 
 and he must have intended to assert a right to the whole of the adjoining land covered by both deeds, and by his possession, to put out all others. The fact of entry in* to the land being admitted, and the intention thereby to usurp the exclusive possession, being thus established, an ordinary case is made within the statute. The property of so bolding will not be denied, while the possession thus gained, is confined to the actual occupancy; for if that be diminutive, tlie loss of the true owner is equally so. He loses only because he is negligent, and in proportion to his negligence. But in this case the defendant insisted that his possession was not to be limited to his occupancy, but was co-exteijsive with his deeds.
 
 *164
 
 principle is certainly well known and clearly es. tablisbed, that while the possession of a mere wrong-doer is bounded by his close, that of one who enters under ti-†]0) though it be defective, shall be taken according to his title, and to be an ouster of the true owner to the extent of the boundaries of the deed. It was in reference to this pretension that the instructions complained of, were, as I understand them, given ; and I am far from thinking that some modification of the rule, such as this case suggested to the judge, is not nécessary; though that laid down by him may not be precisely correct. There are, already exceptions, as well ascertained as the rule itself. Thus, if.there be two patentees, the entry of the younger on his own land, does not oust the other, unless it be on that part of the land which is covered by both
 
 titles;
 
 and if it be on that part, the possession is confined to the actual occupation; if the elder be also in possession of any part of the same land which is included in both. The question is, whether a further qualification shall be admitted, that when the portion into which the actual entry is made,*'and possession taken, is very minute, so that an owner of reasonable diligence and ordinary vigilance, might remain ignorant that it included his land, or might fairly mistake the character of the posses- , sion, the disseisin shall extend beyond the occupancy? The difficulty upon this subject is analagous to that already mentioned, of saying how much cutting of timber short of all, would amount to an ouster. The rule heretofore adopted has been generally delivered in this language, that possession of part is possession of the whole, without saying how much, or what part. 'But I think it may be properly declared, that it must be of as much as will reasonably denote, both to the other proprietor and to the jury, that the party intended to usurp a possession beyond those boundaries to which his title is acknowledged by
 
 all parties.
 
 If the defendant had not a good title to adjoining land,, his entry on the land of the lessor of the plaintiff would be distinct notice, and could not be deceptive. But when his possession for the most part is rightful, and admitted to be so, and
 
 *165
 
 only wrongful to a very inconsiderable extent, it seems to me that he cannot have the benefit of it beyond its ac- ** tual bounds, unless from that and other circumstances, the jury may reasonably infer, that he intended to make open claim under his deeds to the land covered by both. I should therefore concur in the opinion given by the Judge in the Superior Court, if he had not also said, that the intention of the defendant must bo inferred from the possession of that small piece alone, and that the inference of the intention from that must be a necessary one. Although it is the object and the presumption of the law, that the owner will have notice of the possession of an adverse claimant, and of the extent of his claim, and hence the possession of a part is made the possession of the whole against
 
 him;
 
 yet the possession is never evidence, which of necessity shows the extent of the claim, unless the actual possession be of the whole. When it is of part, it is deemed sufficient and reasonable evidence, and puts the owner to ascertain the extent of the deed, or be bound by it. I think therefore, the jury should not have been instructed to find for the defendant, unless they thought the encroachment of the fence nc-cesarily showed the owner that the defendant intended to claim the land; but ought to have been instructed, that although the defendant might not have taken possession by mistake, supposing the land not to belong to the less- or of the plaintiff, but to be within his tract I 111, but did take it under claim of title in himself under his patent for a a a a, yet, as he actually occupied so small a parcel, the plaintiff was entitled to recover the residue, unless all the circumstances of that possession, and other acts of the defendant, furnished reasonable notice to the owner, of the defendant’s claim to the tract of a a a a.
 

 
 *163
 
 When the owner of one of two adjoining grants, runs his fence so near the line as to induce a belief that he intended to follow it. but actually includes land not his own, the possession thus acquired is not adverse*
 

 
 *165
 
 In this point of view, the evidence rejected became important. Although cutting of timber and overflowing the land, do not amount of themselves, to an ouster, yet being done without the leave of the owner, they give a character to the entry into another part, and also furnish evidence of it to the owner. The jury might fairly infer from it, not only that the defendant did claim
 
 *166
 

 the
 
 land,
 
 but that the lessor
 
 of the plaintiff knew ho claimed it and was not a mere wrong doer without color of title. I think that in such a case as this there ought to be some evidence of the owners knowledge of the claim, besides the mere possession of so small a parcel. This might have been shown by an express declaration of the defendant to him. and upon the same principle may be inferred from any other circumstances, which, though in themselves, not amounting to a disseisin, would denote the
 
 quo animo,
 
 with which the possession of the small pai't was taken.
 

 Per Curiam — Judgment reversed.