E. W. GAYLORD v. JAMES T. RESPASS, et al.

*Infants—Deed—Evidence—Relevancy of—Tenants in Common—*
*Statute of Limitation.*

1. The assent of infants will be presumed to a deed made to them as a gratuity at the instance of their mother for a valuable consideration moving from her, and in order to avoid it, the infants must repudiate it after arriving at full age.

2. Evidence is relevant when it tends to the advantage of either litigant, and bears upon the issue.

3. A deed is evidence of its own existence, and of whatever results from its existence, against all persons; its recitals are evidence only against parties and privies.

4. If one tenant in common occupies the common property for twenty years, claiming it as his own, the entry of his co-tenants is tolled.

5. If a tenant in common is in possession under a title independent of the common title, *it seems* that a possession for seven years will bar his co-tenants.

6. A party by taking a deed from one claimant does not debar himself from setting up a better title derived from some other source.

7. In case of the common possession by two persons, the ownership draws to it the possession, and it is presumed to be in him who has the title. So, where a ward resided with his guardian on a tract of land in which he had an interest as tenant in common, his possession is presumed to be in accordance with his title, and there is no adverse possession as against him.

(*Covington* v. *Stewart*, 77 N. C., 148; *Caldwell* v. *Neely*, 81 N. C., 114; *Bell*. v. *Adams*, *Ibid.*, 118; *Pope* v. *Matthis*, 83 N. C., 169; *Gadsby* v. *Dyer*, 91 N. C., 311; *Claywell* v. *McGimpsey*, 4 Dev. 89, cited and approved).

CIVIL ACTION for the recovery of land, heard before *Gudger*, *Judge*, and a jury, at Spring Term, 1884, of BEAUFORT Superior Court.

The land, the title to a part of which is drawn in question in this suit, in 1809 belonged to John Gaylord, and both parties claim under him. He died soon after, leaving a widow Lucretia, and having made a will, that was admitted to probate the following year, wherein said land is devised to his six children by name, the plaintiff being one of them. Subsequently the plaintiff obtained two other shares. In January, 1811, Lucretia Gaylord, assuming to act in the capacity of executrix of the testator, entered into a written agreement with Richard Respass, the elder of that name, and the paternal grandfather of the defendant James T. Respass, in the operative words of which she undertakes to "acquit to and with the said Respass to take the grist-mill and saw-mill, and he to repair the saw-mill, and to put the dam in such places as he may think proper in the same, and to repair the road and bridges as soon as possible." For this service Respass is to " have the use of said saw-mill and timber on the lands adjoining the mill, until he is satisfied for his services, and for tending the grist-mill he, the said Respass, is to have the one-half of all the toll that she may take in." The other provisions relate to repairs, which

in some events are to be made àt the èxpense of Respass, and in others at the expense of the testator's estate, and when the latter have been paid, the executrix is to "have one-third of all that he may saw at said mill, and Respass to have the refusal of the renting of the mill."

On the 25th day of February, 1813, the sheriff of Hyde made a deed to Richard Respass, Sr., for two-thirds of the mill and lands on Broad Creek, conveyed by John Gray Blount to John Gaylord, in which he recites several executions issued to him on judgments recovered by said Respass, and by others against the said John Gaylord, under and by virtue of which he sold the same to Respass for five hundred and twenty-five pounds.

On April 25th, 1819, an arrangement was made between Lucretia Gaylord and said Respass, in pursuance of which the former, for the recited consideration of a deed being executed to her six children "for one-half of Broad Creek saw and grist-mill, with one-half of the mill land, whereon I, the said Lucretia Gaylord, now live, with the exception of Lucretia Gaylord's life-estate, to enjoy said land and mill during her life," undertakes to convey by deed to him " all my (her) right and title in my dowry land laid off to me," &c., " in the half of mills and half of lands where said Richard Respass now lives, being the half of mills and lands owned by said Respass, that I convey my right of dower of, and no other."

In executing his part of the agreement, Respass, on the same day, for the sum of five hundred dollars, stated as the value of the consideration received, executed his deed to the said six children, designating each by name, for " one-half of the Broad Creek saw and grist-mills, with one-half of the lands purchased with said mills by John Gaylord from John Gray Blount, of the town of Washington, with the exception of the life-estate of Lucretia Gaylord in said mills and lands, the land being the half whereon the said Lucretia now lives, being one hundred and fifty acres more or less."

In 1825, under an order of the County Court of Beaufort, issued upon the application of those of the alleged owners of the lands derived from John Gaylord, partition was made by commissioners appointed for that purpose, and the land divided into six equal shares, one allotted to each of the testator's said children, and report made thereof. The land divided lies wholly south of what is known as the divisional line between the Gaylord and Respass lands, no portion of which is in controversy between the parties in this action.

Richard Respass died in August 1836, leaving a will wherein he devises the lands in dispute to his son Richard Respass, Junior, who died in 1845, and the defendant is his son and heir-at-law.

Lucretia Gaylord died in the latter part of the year 1840.

It was shown by various witnesses, and the fact not contested by the plaintiff, that the defendants and their ancestors had been in possession of the land north of the division line, and they claim none south of it, for sixty or seventy years.

Sophia, a daughter of John Gaylord, married John Adams, by whom she had five children, one of whom, John, married the widow of John Respass, Junior, and had issue, a son John F. Adams, who is still living, and another who died without issue. Upon the death of John Adams his widow married the defendant Jones, who, with her, continued to reside on the land, and with whom John F. Adams lived from infancy up, his stepfather becoming his guardian.

On December 1st, 1871, John F. Adams conveyed his interest in the lands in controversy to the plaintiff. Upon the trial, and under the instructions of the Court, a verdict was rendered in favor of the defendants, from the judgment on which the plaintiff appeals.

*Messrs. Rodman & Son*, for the plaintiff.

*Messrs. G. H. Brown, Jr.*, and *H. A. Gilliam & Son*, for the defendants.

SMITH, C. J. (after stating the facts as above). The only exception taken, and not abandoned on the hearing in this Court, during the examination of the witnesses, was to the introduction of the deed from Respass, Senior, to the plaintiff and the other children of John Gaylord, made in April, 1819, on the ground of incompetency and irrelevancy, and for the further reason that the plaintiff, if not others, was then an infant.

Any properly registered deed, or certified copy from the registry, is competent, when pertinent to the issue, or inquiry pending, whatever may be its legal effect, and when made to infants, at the instance of their mother and for a valuable consideration coming from her, as is this, a mere gratuity to the grantees, assent will be presumed to have been given, and infants, to avoid this, must repudiate it after arriving at full age. Nothing of this kind appears to have been done.

It is not irrelevant since the plaintiff takes benefit under it, if it, the evidence, bears upon the issue; and if it does not we cannot see what harm comes from reading it. A deed is evidence of its own existence, and of whatever necessarily results from its existence, against all persons, while its recitals are evidence against the parties and others in privity with them. *Claywell* v. *Mc-Gimpsey*, 4 Dev., 89.

The effects of the several written instruments, assuming them to be effectual for the purpose intended, may be thus summarily stated:

The agreement entered into between the said Lucretia and the elder Respass in 1811, and under which the latter took possession, had for its object the separation of the mills and their management and operation by him for the common advantage, rather than the relation of a lease. But it was superseded by her deed of 1819, and by virtue of it, he acquired a moiety of her dower estate, and thus they became tenants thereof in equal parts. The contemporary deed of Respass to the children, *nominatim*, of John Gaylord, conveyed to them a moiety of the described lands, subject to the life-estate of their mother, whereby they became ten-

ants in common with him in the remainder, together possessing one undivided equal part. Richard Respass, Sr., died in 1836, leaving a will in which the lands are devised to his son of the same name, who continued in possession until his death in 1845, as has his son, the defendant James T. Respass, since, up to the bringing of this suit in 1877.

In the year 1840 the dower estate in the premises terminated by the death of the said Lucretia. It was not contested that the grandfather, father, and son, successively and continuously for a period back of sixty or more years, had been in possession, claiming the lands without interruption from others, as of right. As more than twenty years elapsed after the expiration of the life-estate before the act suspending the statute of limitations went into operation, during which all the other tenants were of full age, their entry is tolled, and their right of action barred. *Covington* v. *Stewart*, 77 N. C., 148; *Caldwell* v. *Neely*, 81 N. C., 114; *Bell* v. *Adams, Ibid.*, 118; *Pope* v. *Matthis*, 83 N. C., 169.

This may not be true as to such as were infants in 1840, and remained under such disability so long that the prescribed period of time had not passed, but the time would avail against the plaintiff who became of age in February, 1829.

But farther than this, the adverse occupation extended over more than seven years after the suspending act ceased to operate and before the issuing of process.

The sheriff's deed, as well as the devise in the will of Respass, Sr., was color of title and operated as such during the hostile occupation. The plaintiff insists, however, that no estate passed to him and others by the deed of Respass to them in 1819, and that their title is superior under their father's will.

It is true a party by taking a deed from one claimant, does not debar himself from setting up a better title derived from some other source, but this would not avail the plaintiff, since the possession under color of title would be equally efficacious, (if not more so,) if there was no tenancy in common, and indeed would bar him in a shorter period.

Nor would the plaintiff's disability in 1819 repel the presumption of his acceptance of the conveyance, from his long acquiescence in the defendants' possession and failure to assert any independent right to the premises. While, when the disability ceased, he could have repudiated the conveyance, it does not appear that he has done so, or done any act inconsistent with its provisions.

The case is different, however, in respect to the occupation of the defendant Jones. James F. Adams, the owner of a small fractional interest, has remained on the land with his step-father and guardian, so that there has been no adverse holding by the latter against him. In case of a common possession by two or more the ownership draws to it the possession, and it is deemed to be in him who has the title.

The inconsiderable interest of Adams, never divested by an adverse holding, passed to the plaintiff in 1871, under his deed of that date. The principle prevailing in such cases, is so clearly stated in the opinion of Baron Rolfe in *Daniel* v. *Woodruff*, 10 M. & W., (Ex.) 607, that we transfer his words : "We are of the opinion that the intention was wholly immaterial, and that the effect of the entry must be ascertained upon legal principles, irrespective of the motives or meaning of the party by whom the entry was made. Where a party having a right of entry, enters, it is not competent to him to repudiate any rights he may possess, and to say he has entered as a trespasser, or by some other than his real title. As soon as he has entered he is possessed, whether he will or not, by virtue of every title which he had in him, and which he could assert by entry." The remark applies with equal force to a possession acquired and continued. Declarations of non-claim, however often and persistently repeated, do not change the relation of the owner to the possession, which, in spite of all attempted disclaimers, is in him under and by virtue of his title. *Gadsby* v. *Dyer*, 91 N. C., 311.

It is needless to examine the instructions which form the subject of appellant's complaint in detail. They may be all resolved in these general propositions.

1. An estoppel rests upon the defendants, and prevents their calling the plaintiff's title in question, arising out of the contract of the executrix by virtue of which possession was acquired.

2. The possession of James F. Adams not only protects his estate, but enures to the common benefit of all his co-tenants and protects them also.

What we have already said disposes of the appellant's exceptions, and disposes with the further and separate examination of them.

There is no error in the rulings so far as they relate to the defendant Respass and his possession, but there is error in them as applied to his co-defendant's possession, as according to our understanding of the record, he occupies a distinct and separate part of the land claimed in the action. There must, therefore, be a new trial of the issues between him and the plaintiff, while the judgment in favor of Respass must be affirmed.

Let this be certified to the end that the verdict be set aside as to the defendant Jones, and a *venire de novo* awarded for the trial of the issues as to him, and further proceedings be had according to law.

*It is so ordered.*