FLANNER v. BUTLER.

(Filed October 14, 1902.)

TRUSTS—*Resulting Trusts—Husband and Wife—Gifts.*

Where a husband deposits money in a bank in the name of his wife and real estate is purchased with such funds and a deed is made to the wife, the property becomes her separate estate, and no trust results from such transaction in favor of the husband.

ACTION by A. J. Flanner against Carrie L. and Henry W. Butler, heard by Judge *E. W. Timberlake* and a jury, at April Term, 1902, of the Supreme Court of NEW HAN-OVER County. From a judgment for the defendants, the plaintiff appealed.

*Bellamy & Peschau, Rountree & Carr,* and *Stevens, Beasley & Weeks,* for the plaintiff.

*E. S. Martin,* for the defendants.

FURCHES, C. J. · This is an action to have defendant Carrie Butler declared trustee of two pieces of property in the city of Wilmington, known as the "Front street property" and "the Dock street property," for the benefit of the plaintiff. The trial resulted in a verdict and judgment in favor of the plaintiff for the "Front street property" and a judgment for the defendant as to the "Dock street property," and both plaintiff and defendant appealed.

At the conclusion of the evidence, the defendants moved to nonsuit plaintiff upon the ground that he had not made a *prima facie* case, taking all the evidence to be true and viewing it in the most favorable light for the plaintiff. The Court refused this motion as to the "Front street property," but allowed it as to the "Dock street property." To this ruling of the Court dismissing his action as to the "Dock street property," the plaintiff excepted, and this exception presents the only question made by the plaintiff's appeal.

The plaintiff and the defendant Carrie were married in 1885, and were husband and wife when the property in controversy was purchased. But since then, the plaintiff and defendant Carrie have been divorced, and the defendant Carrie has intermarried with Henry W. Butler, her co-defendant Carrie. The defendant Carrie testified that when she was married she had no estate, and that the money used in buying the property came from the plaintiff, Flanner. But it appears from the testimony of the defendant Carrie, and from that of the plaintiff (and not contradicted by any evidence), that the plaintiff, some time after his marriage, became a member of a partnership composed of his father-in-law, Larkin, his brother-in-law Alderman, and himself; that

a large amount of money belonging to the plaintiff was used in this partnership, which soon became insolvent, and was compelled to make a general assignment.

The plaintiff testified that when he discovered the partnership was insolvent, "in order to save something from the wreck," he procured the execution of notes, payable to his wife, to the amount of $6,000, which notes were given a preference in the assignment, and were paid in full by the assignee, Davis; that these notes were deposited in bank to the credit of the defendant Carrie, and, when paid, the money was deposited to her credit; that the plaintiff received about $3,000 from other sources, which was also deposited in bank to her credit. This money was used in buying and improving the "Dock street property," and a deed therefor made to the defendant Carrie, with the plaintiff's knowledge and consent.

There has been some discussion as to the possession, whether it was in the plaintiff or the defendant, but we do not think that question is raised by the evidence in this appeal, as neither was ever in the actual possession of the property—it being rented by common consent of the parties, and sometimes one collecting the rent and sometimes the other. But the general rule is that possession is presumed to be in the owner, where there is nothing to show to the contrary (*Gaylord v. Respass,* 92 N. C., 553), but this is not always the case, as between husband and wife. *Faggart v. Bost,* 122 N. C., 517.

If this property had been bought with the plaintiff's money, and the deed made to his wife with his knowledge and consent, it would not have created a resulting trust in the plaintiff. *Thurber v. LaRoque,* 105 N. C., 301. But in this case the land was bought with the money of the defendant Carrie, as the plaintiff had procured the notes for $6,000 to be made payable to her, and deposited them in bank to her credit; and when they were paid, the money was deposited

in bank to her credit.    This constituted a gift by the plaintiff to the defendant Carrie, and the money became hers. *Hairston v. Glenn,* 120 N. C., 341.    The other $3,000 the plaintiff deposited in bank to the credit of defendant Carrie, was a gift, and became her money for the same reason and upon the same authority as the other $6,000.

It seems from the evidence that the plaintiff usually collected the rents, until the defendant Henry informed the defendant Carrie that she could control the property, and she at once wrote to the tenants to pay no more rents to the plaintiff, and, as soon thereafter as she could procure the money to do so, she went to South Dakota, where she procured a divorce from the plaintiff, and, not long after procuring the divorce, she married her co-defendant, Henry.

It seems by these manipulations the plaintiff lost his money and his wife, and we are unable to see any legal remedy he has to regain them.    The fact that he gave his money to his wife to defraud his creditors will hardly afford him any comfort.    But the fact that he also lost his wife may be some consolation to him.

Affirmed.