## D. T. CURRIE v. WILLIAM GILCHRIST.

(Filed 20 May, 1908).

1. **Deeds and Conveyances—"Lappage"—"Color" of Title—Adverse Possession—Evidence.**

   When there are two claimants to land under different grants, which include a part of the land in both, thus causing a "lappage," the *locus in quo* being embraced therein, there is "color" of title in the junior grantee, and if he can show thereunder adverse possession for seven years it will bar the right of entry of the other party.

2. **Same—Occupation—Presumption.**

   When the junior grantee claims title against the senior grantee of lands embraced in the "lappage" caused by the description in their grants by reason of adverse possession under "color," and has introduced evidence tending to show the possession, his possession, by construction of law, extends to the boundaries of his deed or grant upon which he relies, and is not confined to so much thereof as may have been in his actual occupation and possession, if the senior grantee had no actual possession of the "lappage."

3. **Deeds and Conveyances — "Lappage" — "Color" of Title — Evidence—Adverse Possession, Charatcer of.**

   When the junior grantee claims title by adverse possession under "color" in the "lappage" of lands caused by the description in his own and the deed of the senior grantee, his possession must be of such character and so continuous as to indicate to the other proprietor the intention of claiming the land beyond the admitted boundaries, and upon competent evidence the question is one for the jury, under proper instructions from the court as to the legal effect of the possession.

4. **Same—Evidence—Instructions.**

   When the senior grantee has had no actual possession of the "lappage," and there is evidence on the part of the junior grantee that he has held adversely to the senior grantee a "lappage" of lands in the descriptions of their grants, it is error in the trial Judge to charge the jury that the latter is deemed in law to be in possession of the entire tract covered by his title, except as to so much thereof as the former may have had in his actual occupation and possession.

5. **Evidence—Questions for Jury.**

   When there is more than a scintilla of evidence the question is for the jury, and a motion as of nonsuit is properly refused.

6. **Deeds and Conveyances—Boundaries—Description—Number of Acres.**

  While ordinarily the number of acres mentioned in a deed constitutes no part of the description, yet when C., in an action for possession, claims that his lands extend beyond a certain line to and including the lands claimed by G., and there is at least some doubt as to the true location of his lands respecting it, evidence is competent to show that the land occupied by C. on his own side of the line and within his alleged boundaries contained a greater number of acres than that called for in his deed.

ACTION tried before *Webb, J.,* and a jury, at October Term, 1907, of SCOTLAND.

Plaintiff appealed.

*M. L. John, J. A. Lockhart* and *Adams, Jerome & Armfield* for plaintiff.

*J. G. McCormick, McLean & McLean* and *Rountree & Carr* for defendant.

WALKER, J.   This is an action brought to recover the possession of land.   The plaintiff alleged that he is the owner of a tract of land which was granted by the State, 4 December, 1828, to John Purcell, lying on both sides of Jordan's Creek, and showed the grant and mesne conveyances connecting him with the same, and that the defendant is in possession of a part of the said tract which lies southwest of the creek.   The defendant claimed title under a grant to Duncan McLaurin, dated 31 March, 1842, and mesne conveyances by which any title acquired by said grant was vested in his father, John Gilchrist, and then by descent in him.   There was evidence tending to show that the Purcell grant and the McLaurin grant covered in part the same land, which is the *locus in quo.*   The defendant contended that, if the McLaurin grant did not pass the land to the grantee by reason of the fact that the State had already devested itself of the title by the prior grant to John Purcell in 1828 (*Berry v. Lumber Co.,* 141 N. C., 386), the McLaurin grant and the mesne conveyances, and especially the deed of Ferdinand McLeod to John

Gilchrist, constituted color of title, and the defendant relied upon this color and adverse possession to show title in himself. He also asserted that he and those under whom he claims had been in adverse possession of the disputed land for twenty years, and thereby he acquired title to the *locus in quo,* whether he had any clear color of title or not.    At the request of the plaintiff, the court charged the jury as follows:

"1. The court charges you that, if William Gilchrist and those under whom he claims have been in possession of the lands in dispute—that is, the lands on the southwest side of Jordan's Creek, which are claimed by plaintiff—for twenty years before the commencement of this action, up to known and visible lines and boundaries, adversely to all other persons, then this would vest the title in fee simple in said lands in William Gilchrist, and this would be so whether William Gilchrist and those under whom he claims did or did not have any deed for the said land.

"2. If you should find from the evidence that ·John Gilchrist, the father of William Gilchrist, was in the possession of said land for four or five years prior to his death, and that after his death and from the time thereof continuously the widow and heirs at law of John Gilchrist were in the possession of said lands, and thereafter and continuously since William Gilchrist and his tenants or those under him have been in the possession thereof, cultivating the lands under cultivation, getting wood and straw therefrom and in other ways exercising acts of ownership and dominion over it, all of them using it as aforesaid up to Jordan's Creek and from Stewart's line to Laurel Hill Church, this would vest the title in fee simple in said lands in William Gilchrist, the plaintiff cannot recover, and you should answer the first issue 'No' and the fourth issue 'Nothing.'

"3. If the defendant, William Gilchrist, or those under whom he claims, have been in possession of the lands in dispute—that is, the lands on the southwest side of Jordan's

Creek—under known and visible lines and boundaries and under colorable title for seven years, adversely to all parties, before the commencement of the action, the plaintiff cannot recover, and you should answer the first issue 'No' and the fourth issue 'Nothing.' "

The court further charged the jury as follows: "Where a party introduces a grant from the State and a connected chain of title from the State to him, he is deemed in law to have possession coextensive with his title, and is constructively in possession of all land embraced in his boundaries, unless he is ousted by the actual possession of a part of the land by the personal occupation of another, when his possession would not extend to the land in the actual occupation of such adverse claimant; and if you should find from the greater weight of the evidence that the plaintiff's grant and deeds cover the land in controversy, and that the plaintiff, Currie, was in possession of the lands embraced in his grant and deeds and actually occupied a part of said lands on the northeast side of Jordan's Creek, then he is deemed in law to be in possession of the entire tract covered by his title, except as to so much thereof as the defendant may have in his actual occupation and possession."

The defendant excepted to this instruction. As we think there was error in the last instruction, and that it was calculated to mislead the jury upon the law as to the effect of possession by one of the parties of a part of the lappage, where there is an interference between the boundaries of the titles as claimed by the respective parties, we need not consider the other questions presented, except the motion to nonsuit, which will be adverted to later.

The charge of the court, to which we have referred as being erroneous, confines the adverse possession of the defendant and those under whom he claims to the land actually occupied by him and them—that is, to the land of which they had a *pedis possessio.* The principle thus stated by the court is not

correct with regard to a lappage where one of the parties is in the actual possession of a part under color of title. In such a case, if the party claiming under the senior title is not in possession of any part of the lappage and his adversary has been in actual possession of a part under a deed which defines his boundaries and is color of title, the law extends his possession to the whole of the lappage, and if he retains the possession for the time required by the statute, seven years, and it is adverse, it will bar the right of entry of the other party and defeat his recovery. If in this case the plaintiff's paper title embraces the *locus in quo* and there has been no sufficient adverse possession of the lappage by either party, the plaintiff would have the better right, as the law adjudges the possession and the right of possession to be in him who has the better title. *Cohoon v. Saunders,* 29 N. C., 189; *Gaylord v. Resperss,* 92 N. C., 553; *Straughan v. Tysor,* 124 N. C., 229; *Flanner v. Butler,* 131 N. C., 151; *Drake v. Howell,* 133 N. C., 162. But even if the defendant has what is sometimes called the junior paper title, and he can avail himself of the same as color, as is the case here, then if he has had adverse and continuous possession of the lappage or a part thereof for seven years prior to the bringing of this action, and the plaintiff has had no actual possession of any part thereof, the possession of the defendant by construction of law is extended to the boundaries of the deed or grant upon which he relies as color, and ripens his imperfect title into a good and perfect one. The lappage in such a case is regarded as practically a separate and distinct tract, so that the color of title of the defendant will ripen into a perfect title by a sufficient adverse possession, the same as if he had a separate deed for that part of the land, there being, of course, no possession, as we have said, by the owner of the senior title. We think the decisions of this Court clearly sustain these views. The principle is clearly stated in *Williams v. Miller,* 29 N. C., 186, by *Chief Justice Ruffin:* "As the case stands upon the

exception, it is to be assumed that the line of the Williams grant was where the plaintiff claimed, and where, indeed, the defendant admitted it to be; but it is to be assumed also that the line of the defendant's grant was where he claimed it to be, and where the plaintiff denied it to be; so that in point of fact there was, according to the expression that has come into common use, a lapping of the grants upon each other.   In such a case the law has been held in many cases to be that if one of the claimants be seated on that part, and the other not, the possession of the whole interference is in the former exclusively, possession of part of the land included in both deeds being possession of all of it.   As the defendant thus had the possession for seven years of the whole of the land covered by both grants, he acquired a good title to the whole, though his was the junior grant," citing *Green v. Harman,* 15 N. C., 158; *Dobbins v. Stephens,* 18 N. C., 5; *Carson v. Burnett, ib.,* 546; *Williams v. Buchanan,* 23 N. C., 535.   The rule has been often stated by this Court and in somewhat different phraseology.   Thus, in *Dobbins v. Stephens, supra,* it is said that "if neither claimant be in actual possession of the land covered by both deeds, the seisin is in the owner; but if one of them be seated on that part, and the other not, then the possession of the whole interference is in the former.   But if both have actual possession of it, the possession of the whole is in neither; that of the owner extending by virtue of his title to all not actually occupied by the other, and that of the latter being limited to his actual occupation.   So the rules have been long understood, as expressed in *Den v. Harman,* 15 N. C., 158."   And in *Williams v. Buchanan, supra, Judge Gaston* formulates the principle thus: "The case, then, is one of a senior and a junior deed interfering in part with each other, or, in common parlance, lapping upon each other.   The law in that case is undoubtedly as his Honor stated it—that if neither of the parties contending under these deeds has had an actual *pedis positio* on the part comprised within both

deeds, but each grantee is settled on that part which is claimed only by himself, the law adjudges the possession of the lap or part included within both deeds in him who has the elder deed or better right; but if neither be actually settled on the part included within both deeds, the law adjudges him to be in the exclusive possession thereof." We may therefore take it to be settled by this Court by a long and unvarying line of decisions that, if the person who claims under the elder title have no actual possession on the lappage, such possession, although of a part only, by him who has the junior title, if adverse and continued for seven years, will confer a valid title for the whole of the interference, the title being out of the State. *Kerr v. Elliott,* 61 N. C., 601; *Howell v. Mc-Cracken,* 87 N. C., 399; *Asbury v. Fair,* 111 N. C., 251; *Boomer v. Gibbs,* 114 N. C., 76. If each of the parties is in possession of some part of the lappage, the possession of the true owner or the one having the older title extends to all of the land embraced by the interference which is not actually occupied by the one claiming under the junior title. *McLean v. Smith,* 106 N. C., 172; *Asbury v. Fair, supra.* If the possession taken under the junior title is of a portion of the land so very minute that the true owner, even in the exercise of ordinary vigilance, might remain ignorant that it included his land or might fairly mistake the character of the possession and the intention of the occupant, it may fairly be doubted if the disseissin should be allowed to extend beyond the actual occupancy. The possession so taken, it would seem, should be of as much, in connection with the circumstances of the entry, as will reasonably indicate to the other proprietor and to the jury that the intention is to usurp a possession beyond the admitted boundaries and to make open claim under the junior title to the land covered by both, and that it is not merely a possession taken under a mistake or misapprehension as to the true dividing line. In such a case—that is, when the possession is wrongful only to an inconsiderable

extent and with the limitation stated—the disseisor should not have the benefit of it, at least beyond its actual bounds. *Green v. Harmon, supra.* It will generally be a question for the jury, under proper instructions from the court as to the legal effect of such a possession. The possession, to be adverse, should, of course, be denoted by the exercise of acts of dominion over it in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to show that they are done in the character of owner and not merely of an occasional trespasser. *Williams v. Buchanan, supra; Gudger v. Hensley,* 82 N. C., 482; *Baum v. Shooting Club,* 96 N. C., 310; *Staton v. Mullis,* 92 N. C., 623; *Simpson v. Blount,* 14 N. C., 134.

Applying the foregoing principles to the facts of the case, we are constrained to think the court erred in its last instruction to the jury. The defendant contended, and there was evidence to show, that his northeast boundary and the southwest boundary of the plaintiff's land were at Jordan's Creek. Even if the plaintiff's contention was correct that his lower boundary was southwest of Jordan's Creek, then if there was evidence to show, and the instructions of the court concede that there was, that the defendant's northeast boundary was Jordan's Creek or the line indicated on the map as extending from 14 to K, there was a lappage of the two titles, and the instruction of the court was therefore not only contrary to the principle established in the law of boundary which we have stated, but was calculated to mislead the jury as to the legal effect of the possession upon which the defendant relied to ripen his color of title. The court clearly ignored the contention of the defendant and the evidence which supported it, and assumed that there was only evidence to establish the boundary according to the plaintiff's contention. This was a positive error and not a mere omission to charge upon a phase of the case presented by the evidence, where no instruction

was asked as to it. According to the evidence and the contentions of the respective parties, there was a lappage, and the instruction was certainly not correct, as the statement of a rule of law, if there was. As an abstract proposition it was correct, but as applied to the facts of the case, as the jury may have found them to be, it was not. For this error we order a new trial.

Upon the motion to nonsuit the plaintiff we need only say that there was more than a *scintilla* of evidence as to the location of the boundaries described in the grant and deeds upon which the plaintiff relied to show title. The evidence was perhaps not very satisfactory and may not be convincing, but that is a matter for the consideration of the jury and not for us to pass upon.

As to the testimony offered by the defendant to the effect that there is more land above or northeast of Jordan's Creek and within the plaintiff's alleged boundaries than is mentioned in his deed—about fifteen acres more—we can only say that in the present state of the proof this evidence should have been admitted, because there was at least some doubt as to the true location of the plaintiff's land. "Ordinarily the number of acres mentioned in a deed constitutes no part of the description, especially when there are specifications and localities given by which the land may be located; but in doubtful cases it may have weight as a circumstance in aid of the description, and in some cases, in the absence of other definite descriptions, may have a controlling effect." *Whitaker v. Cover*, 140 N. C., 280; *Harrell v. Butler*, 92 N. C., 20; *Baxter v. Wilson*, 95 N. C., 137. We do not think the plaintiff's location of his boundaries was so certain and unmistakable as to exclude evidence of this kind, but at the next trial the case may be different, and what we have said must be restricted to the facts as they now appear.

New Trial.