This is an action to recover land and to remove a cloud from (11) title.
The plaintiff alleges that she is the owner of 465 acres of land particularly described, and that the defendants are in possession of about 169 acres thereof, asserting a claim thereto.
The defendants deny that the plaintiff is the owner of the land described in the complaint, on information and belief, and allege that they are the owners of 169 acres thereof, which is particularly described.
The following issue was submitted to the jury:
1. Are the defendants the owners of the land described in the first paragraph of the answer or any part thereof? Answer:
Upon the trial of the action the defendants made the following admission of record.
"It is admitted by the defendants that State grant No. 251 to David Allison, dated 28 November 1796, registered in Book 2, page 458, containing 250, 240 acres, covers the locus in quo and that by connected mesne conveyances passing from the State to Allison and down to the plaintiff, that the plaintiff is the owner of all of the 465 acres described in the complaint, except so much thereof as the jury may find from the evidence that the defendants have acquired title to by adverse possession under color of title for seven years or longer."
The defendants own a tract of land known as the Clapp (12) place, which adjoins the 169 acres, and they offered evidence tending to prove that they had cleared five or six acres, beginning on the Clapp place, and extending over on the 169 acres to the extent of about two acres, and that they had cultivated and were in possession of this two acres under color of title for more than seven years before the commencement of the action.
The plaintiff offered evidence that the clearing on the 169 acres was small and not of sufficient size to attract attention; that it was made by mistake and not under a claim of right and with no intent upon the part of the defendants to claim beyond their boundary. *Page 13 
His Honor charged the jury that the burden was on the defendants on the first issue and he then instructed the jury as follows:
"That if the defendants or those under whom they claim entered upon the land described in said deed, or any part thereof, no matter how small, within the boundaries of the land claimed by the plaintiff and remained in possession of said part of said land so entered upon openly, notoriously and continuously for seven years, then the defendant's title ripened to the entire boundary of the hundred and sixty-nine acres described in the deed, which is the land claimed by them in their answer, and it will be your duty to answer the first issue `Yes,' unless you shall find that such possession was made and held by defendants by mistake, and was so insignificant as to be insufficient to give notice of the possession. That the burden is upon the plaintiff in this case to satisfy the jury by the greater weight of the evidence that such possession was by mistake and not sufficient to give plaintiff notice."
The jury answered the first issue "Yes," and his Honor set aside the verdict for errors of law in the charge, and defendants excepted and appealed.
The admission of the defendants that the plaintiff is the owner of the 465 acres described in the complaint, except so much thereof as defendants could show title to by seven years adverse possession under color of title, placed the burden of proof on the defendants (Land Co. v. Floyd,171 N.C. 544), and it was in recognition of this principle that the first issue was framed as it is.
The real controversy, then, between the plaintiff and the defendants on the trial was as to the extent and character of the possession by the defendants of the small part of the land cleared on the 169acre tract.
Possession which will ripen an imperfect into a perfect title must not only be actual, visible, exclusive, and continued for the necessary period of time, but it must be under a claim of (13) right. "It is the occupation with an intent to claim against the true owner which renders the entry and possession adverse" (Parkerv. Banks, 79 N.C. 485; Snowden v. Bell, 159 N.C. 500), and if the possession is by mistake or is equivocal in character, and not with the intent to claim against the true owner, it is not adverse. Greenv. Harmon, 15 N.C. 163; King v. Wells, 94 N.C. 352;Land Co. v. Floyd, 171 N.C. 546. *Page 14 
In the last case the Court says, "Plaintiff contends that the evidence shows that defendant occupied only a small strip of the land just across the line, and that possession of this small piece was not sufficient to extend the adverse possession by construction to the boundaries of the deed, which defendant claims as color of title.
This question was discussed by Chief Justice Ruffin in Green v. Harman, 15 N.C. at p. 162, where he said: "The operation of the statute of limitations depends upon two things: The one is possession continued for seven years, and the other the character of that possession — that it should be adverse. It has never been held that the owner should actually know of the fact of possession, nor have actual knowledge of the nature or extent of the possessor's claim. It is presumed, indeed, that he will acquire the knowledge, and it is intended that he should. Hence, nothing will bar him short of occupation, which is a thing notorious in its very nature, and that must be contained seven years in order to affect him, not that time to bring suit for redress of a known injury, but full opportunity to discover the wrong. To the extent of the occupation there is primafacie, no hardship in holding that it is on a claim of title and adverse, and that the owner knew of it. Every man must be considered cognizant of his own title, the boundaries of his land, and of all possessions on it, either by himself or others. Ordinarily, possession taken by one of another's land is of a part sufficient to quantity or value to show the jury that the possession was taken adversely, and also to afford unequivocal evidence to the other claimant of that intention. And so far as the actual occupation goes, it seems to furnish such evidence in almost all cases. If, indeed, two persons own adjoining lands, and one runs a fence so near the line as to induce the jury to believe that any slight encroachments were inadvertently made, and that it was the desire to run on the lines, the possession constituted by the inclosure might be regarded as permissive, and could not be treated as adverse, even for the land within the fence, except as it furnished evidence of the line in a case of disputed boundary. The line being admitted, it would not make a title where a naked adverse possession will have that effect, because there was no intention to go beyond his deed, but an intention to keep within it, which by a mere mistake he has happened not to do." We followed this view of the law in Currie v. Gilchrist, 147 N.C. 648.
It is also well established with us that every possession of (14) land is presumed to be under the true title, and the defendants having admitted that the plaintiff has a paper title which she traces back to a grant by the State, this presumption would impose *Page 15 
the burden upon them of showing that the plaintiff had lost her title by an adverse possession. Monk v. Wilmington, 137 N.C. 325; Bland v. Beasley,145 N.C. 168; Land Co. v. Floyd, 167 N.C. 687.
If, therefore, the defendants were claiming the 169 acres by adverse possession, if the burden of proving this adverse possession was on them, and if the determination of the question depended on the nature and character of the possession which they had of a small clearing on the 169 acres, it follows necessarily that the burden was on them to prove that they held the land in the clearing openly, continuously and adversely, and with intent to claim against the true owner, and that it was error for his Honor to charge the jury that the burden was upon the plaintiff "to satisfy the jury by the greater weight of the evidence that such possession was by mistake and not sufficient to give plaintiff notice."
The defendants say, however, that this instruction could not have misled the jury because his Honor charged the jury more than once that the burden of the first issue was upon the defendants, and they invoke the rule which we adhere, that a charge must be considered as a whole.
It does appear from the record that his Honor charged the jury several times that the burden of proving adverse possession was on the defendants, but at no time that they must show that the land within the clearing was not occupied by mistake, but dealing with the charge in the aspect most favorable to the defendants, it presents the case of instructions upon a vital question that are inconsistent with each other, and if so, a new trial was properly ordered, as the Court cannot know which instructions a jury followed.
It is said in Raines v. R. R., 169 N.C. 193, "An error in the charge must be eliminated by a retraction of it or a proper explanation which will remove a wrong impression made by it, and the giving of another correct but conflicting instruction does not answer the purpose as it does not produce desired results," and again, in Horton v. R. R., 162 N.C. 455, "In any view of the charge of the court, there are conflicting instructions on material points and under such circumstances this Court should direct another trial.Williams v. Haid, 118, N.C. 481; Edwards v. R. R., 129 N.C. 78; Westbrookv. Wilson, 135 N.C. 402."
We are therefore of opinion that his Honor properly set aside the verdict on account of the error in his charge.
Affirmed.
Cited: McNeill v. Manufacturing Co., 184 N.C. 423; Whitten v. *Page 16 Peace, 188 N.C. 303; Penny v. Battle, 191 N.C. 224; Wallace v. Bellamy,199 N.C. 764; Gibson v. Dudley, 233 N.C. 258; Price v. Whisnant,236 N.C. 385; Memory v. Wells, 242 N.C. 280.