The plaintiff brought this suit against the defendant, claiming ownership of a tract of land of 100 acres, in Cumberland County, and alleging that the defendant had committed a trespass on the land. The defendant admitted the ownership by the plaintiff of the land adjoining that of the defendant. He denied that he committed any trespass, and alleged that he was the owner of the disputed land under the deed referred to in his answer. There was a survey ordered by the court, and the land was surveyed, when, as is alleged, the plaintiff was present with his deeds, and when the defendant was not present, but sufficient information was obtained by the surveyor to ascertain the location of the disputed land, and it appears from the testimony of the surveyor and from his plat that there was, as argued by defendant, a case of lappage of about 15 acres between the boundaries of the plaintiff's deed and the boundaries of the defendant's deed. It is true that the plaintiff showed a chain of paper title running back for some years, *Page 529 
and there was evidence on the part of the plaintiff of possession. The defendant also introduced paper title running back for some years, and he asserts that the evidence of his possession of the fifteen acres lappage was direct and plenary, showing that he had been in (493) actual possession of the disputed territory since the date of his deed, in 1903. He had cut wood and timber on it, had worked the turpentine, and had actually cleared up and cultivated a portion of it.
The plaintiff contended that Long Branch constitutes the defendant's boundary, and the defendant contended that it was the "McQueen line," which is some ten or twelve chains east of the actual run of Long Branch. One issue, as to the ownership and possession of the land, was submitted to a jury, and the verdict was in favor of the defendant. Judgment, and plaintiff appealed.
We will take up the exceptions in the order adopted by the plaintiff in his brief:
Assignment of error No. 6 is treated by counsel first, and it seems to be taken entirely to the contention made by the plaintiff that the defendant's deed covered no land east of Long Branch, for the reason that the first call of the defendant's deed is as follows: "Beginning at a black gum in Yarborough's corner, and runs with his line . . . to McQueen's line, thence as said line." If it had been ascertained definitely by the jury, or had been admitted that "McQueen's line" was in Long Branch, the plaintiff might have reason to complain, but it will be noted:
1. That the deed to the plaintiff does not call for the run of Long Branch, but corners in "a log road at or near the east edge of Long Branch; thence with the east edge of said branch," etc. Under this phraseology it can be reasonably contended that the line did not go to the run of the branch, but only skirted the edge of the swamp, "at or near the east edge of the branch."
2. Defendant contends that if there were no other evidence than the deeds offered by the plaintiff as to the location of his western line, the plaintiff might successfully maintain his position, but there is evidence in the record to show that the "McQueen line," as generally recognized in the community, was a straight line on the edge of the hill and on the east side of Long Branch. E. G. Blake stated that he was present when the land was surveyed, and the survey was made on the east edge of the swamp, and the line was a straight line. And the witness Yarborough testified that the "McQueen line" was a straight line along the east edge of Long Branch, and that there were marks on the line below the point "B" as it appears on the blue-print. The witness, D. S. *Page 530 
Jackson, stated that when Mr. Jessup, the county surveyor, ran the original line, he was present, and that the division line called for a straight line. If this testimony was to be believed by the jury, and his Honor properly submitted the question to them, they had the right, under the same, to answer the issue in the defendant's favor.
The authorities cited in plaintiff's brief do not apply to the (494) facts of this case. There was no dispute as to the location of Long Branch, but there was a dispute as to the location of what was known in the community as the "McQueen line," and there was evidence on the part of the defendant to the effect that the McQueens had never had possession of any of the property west of the straight line contended for by the defendant as being the "McQueen line." When the actual location of the McQueen line was in dispute, the court left the fact to be determined by the jury.
The defendant having introduced evidence of a deed covering the fifteen acres lappage, if it did cover it, and an actual adverse possession, under that deed, since 1903, he was entitled to have the matter submitted to the jury under a proper charge from the court, so that they could pass upon the issue as to whether the land belonged to the plaintiff or to him. Even though the plaintiff may have shown a senior paper title, if the defendant could show that he was in the actual adverse possessions of the lappage under a deed which covered the land in dispute, and the plaintiff could only show constructive possession, then the jury could answer the issue in the defendant's favor. Simmons v. Box Co., 153 N.C. at p. 261; Currie v.Gilchrist, 147 N.C. 648. In this case the Court held as follows: "We may, therefore, take it to be settled by this Court, by a long and unvarying line of decisions, that if the person who claims under the elder title have no actual possession on the lappage, such possession, although of a part only, by him who has the junior title, if adverse and continued for seven years, will confer a valid title for the whole of the interference, the title being out of the State." See, also, Boomer v. Gibbs, 114 N.C. 76;Asbury v. Fair, 111 N.C. 251; Howell v. McCracken, 87 N.C. 399; Kerr v.Elliott, 61 N.C. 601. In the same case the Court holds that when there is a claim by a junior grantee of title by adverse possession, under color, of the lappage of certain lands, and his possession is of such character and so continuous and adverse as to indicate that he is claiming the land beyond the boundaries of the plaintiff's deed, upon competent evidence, the question is one for a jury, under proper instructions from the court as to the legal effect of the possession.
We do not see how it can be seriously contended that defendant's deeds do not constitute color of title. There is no contention that the *Page 531 
deeds do not cover any land at all, or that they are in any way void for indefiniteness or uncertainty of description. If there was no doubt about the fact that the McQueen line was located as claimed by the plaintiff, it might then be contended with some reason that the deed covered no part of the land at all, but when several witnesses testify positively that they were present when the division line was run, and that this division line is a part of defendant's boundary, the judge (495) did not err in allowing the jury to decide the controversy.
It appears from plaintiff's brief that he mainly relied upon the assignment of error No. 6, and that his other exceptions relate only to the admission of evidence.
Plaintiff contends that it was not proper to allow the surveyor, Smith, to testify as to his efforts to find the beginning corner "A," and what Yarborough, the adjoining landowner told him about it. This evidence does not seem to be material to the real controversy, and if there was any error it was harmless. Singleton v. Roebuck, 178 N.C. 203, where the Court said: "It was competent for the witness, when asked about the corner at the point, to state that he knew where the stump was, and, besides, it appears to have been harmless and not prejudicial."
Exceptions were taken to questions asked the witness Yarborough, as to whether certain descriptions included the land in dispute. In Singleton v.Roebuck, supra, cited to us, the Court held that it is competent for a witness to state that a deed covers the land in dispute when he is stating facts within his own knowledge.
Other exceptions referred to in the assignments of error relate to the testimony of the witness Blake, as to the location of the line between McQueen and Graham, and he testified of his own knowledge that this line is a straight line. This testimony was clearly competent to show the location of the boundary line between plaintiff and defendant, which was a pertinent inquiry to be settled by the jury. He was not giving an opinion or hearsay, but was testifying to an actual fact, because he was present when the Jackson land on the west of the line was surveyed, and it appears that "the defendant's land is a part of a tract known as the Jackson land."
Certain exceptions relate to the cross-examination of plaintiff's witness Smith, by which it was shown that the boundaries of plaintiff's deed, if run to the edge of Long Branch, would include 156 6/10 acres instead of 100 acres, as appears from the description set out in the complaint. This Court has held in several cases that while ordinarily the number of acres mentioned in a deed constitutes no part of the description, yet, where there is doubt as to the location of the land, or some of the lines, evidence which tends to show the acreage may sometimes be *Page 532 
relevant and important. In Currie v. Gilchrist, 147 N.C. 656, the Court used this language: "Ordinarily, the number of acres mentioned in a deed constitutes no part of the description, especially when there are specifications and localities given by which the land may be located, but in doubtful cases it may have weight as a circumstance in aid of the description, and in some cases, in the absence of other definite (496) descriptions, may have a controlling effect." See, also, Whitaker v. Cover, 140 N.C. 280; Harrell v. Butler, 92 N.C. 20;Baxter v. Wilson, 95 N.C. 137, and as said in Lumber Co. v. Hutton, 152 N.C. at p. 541: "Where the location or boundary is doubtful, quantity becomes important." See, also, Peebles v. Graham, 128 N.C. 227;Brown v. House, 116 N.C. 866; Cox v. Cox, 91 N.C. 256. It was certainly competent for the court surveyor to testify as to the actual acreage according to the plaintiff's contention, when he had made the official map and had actual knowledge of the facts.
The defendant emphasizes the fact, in his brief, that though the plaintiff lost on the issue submitted to the jury, he has now really more land than his deed calls for, but this is immaterial unless it may have some slight bearing on the location of the land in dispute, but we have not considered it in that light.
The crucial question is as to the location of the McQueen line, and as the evidence was not all one way, and there is some doubt upon the question, it presented a case for the jury.
The case of Rowe v. Lumber Co., 133 N.C. at marginal page (Anno. Ed.) 439, may be applicable here and show that the question raised, as to the location of the land, was a proper one for the jury. We there said: "The court seems to have excluded these deeds upon the supposition that this Court had ruled at the former hearing of the case that when Catskin Swamp was called for it meant the edge of the swamp, and that the line should stop there. We do not so understand the former ruling. It is true thatFurches, C. J., in Rowe v. Lumber Co., 128 N.C. 301, said that certain authorities cited by him tended to sustain the view `that a call to a swamp, and along a swamp, only goes to the swamp'; but by reference to other parts of the opinion, especially at page 302, it will be seen that he was referring to a call for an object on the margin of the swamp, and not to a call for the swamp generally, for he says: `But the calls on the other two tracts on the east side are to points on the margin or banks of the swamp, and thence with the swamp.' We cannot think that the learned ChiefJustice intended to repudiate the principle laid down in Brooks v. Britt,15 N.C. 481, that where there is a call for a swamp it is for the jury to say whether the margin or the run is intended, for he cited that case as one of the *Page 533 
authorities in support of what he had said at page 304. The last expression of the opinion must be qualified and restricted by the particular facts of the case to which it referred. We still adhere to the doctrine so well stated by Gaston, J., in Brooks v. Britt, supra, that where a swamp is called for, whether the run in the boggy and sunken land, or the margin of such boggy and sunken land, is the call of the grant, depends `upon facts fit to be proved and proper to be (497) passed by the jury'; so that in this case, where there is such a call, it must be governed by that principle, and likewise, where there is a call for Catskin or Catskin Swamp or Catskin Creek, whether the call refers to the run or the boggy or sunken land, it must, under the same authority, depend upon facts `fit to be proved' and proper to be considered by the jury. This ruling will apply to all deeds not calling for the run in such manner as to leave no doubt that it was intended as one of the lines of the tract."
The court took the right view of the case, and no error is found in the record.
No error.
Cited: Etheridge v. Wescott, 244 N.C. 641.